In the Matter of the Estate of ALICE G. VANDERBILT, Deceased.

Surrogate's Court, New York County, June 7, 1937.

*Anderson, Gasser, Ferris & Anderson,* for the executors as such and as individuals.

*Root, Clark, Buckner & Ballantine,* for Gladys Szechenyi.

*Le Boeuf, Winston, Machold & Lamb,* for Cathleen Vanderbilt Lowman.

*Cadwalader, Wickersham & Taft,* for Thomas B. Gilchrist, as general guardian of Gloria Laura M. Vanderbilt, infant.

*Edgar Hirshberg* [*Sol Zaretzki* of counsel], for the State Tax Commission.

FOLEY, S. This is an appeal by the executors and by individual beneficiaries from the *pro forma* order of July 13, 1936, fixing the estate tax upon the appraiser's report.

Cornelius Vanderbilt died on September 12, 1899. Under his will, among other bequests, he gave to his wife, Alice G. Vanderbilt, the decedent here, a fixed annual income of $250,000. Provision was made for the setting aside of a trust fund of securities sufficient to pay that annual amount. He conferred upon her a limited power of appointment over the principal of the fund restricting her in her disposition to legacies to be given to their issue in such shares as she should direct in her last will. In default of the exercise by Mrs. Vanderbilt of this limited power, he provided that the fund be divided among their four children equally, with substitution in case of the death of any of them to their issue or to the survivors where there was no issue of any deceased child.

Mrs. Vanderbilt died on April 22, 1934. Her will exercised the power of appointment by specific reference to the terms of her husband's will. She gave to her daughter, Gertrude V. Whitney, $150,000, and to the issue of her deceased son, Alfred, $500,000. Of the residue she gave one-third to the issue of her deceased son, Reginald, and the remaining two-thirds to her daughter, Gladys Szechenyi.

In his report in the pending estate the tax appraiser has found the value of the fund at the date of the death of Mrs. Vanderbilt to have been $5,935,572.07. He has taken the full value of the fund without reference to any deduction for the value of the life estate of Mrs. Vanderbilt. He has added the full undiminished value to the personal estate left by her. The combined gross estate as found by him is $10,770,907.17. The net estate is fixed at $10,004,587.85. A tax has been assessed against the succession to this amount in the sum of $1,335,812.19. By the inclusion of the appointed fund the total tax has been increased by approximately $900,000 and the tax upon her personal estate has been increased by approximately $200,000.

The grounds of appeal are first that there was erroneously included as part of the decedent's gross estate the appraised value of the appointed fund, and second that there was erroneously included in the appraised value of the appointed fund, (a) the amount of the appointed legacy bequeathed by Mrs. Vanderbilt to her daughter, Mrs. Whitney, and (b) the amounts of the appointed legacies passing to the three children of her son Alfred. Upon the second ground of appeal these beneficiaries asserted a right to elect to take their shares under the donor's will and thereby to renounce the lesser benefits derived by them under the donee's will.

The second ground of appeal may be disposed of readily. It is sustained. The amounts payable to the designated legatees under the exercise of the appointment are less than they would have

received had the power not been exercised. In default of the power they would have taken greatly increased shares under the will of Cornelius Vanderbilt. Under such circumstances the law is clear that they may elect to take under the will of the donor and not under the exercise of the power by the donee. (*Matter of Ripley*, 122 App. Div. 419; affd., 192 N. Y. 536; *Matter of Slosson*, 216 id. 79; *Matter of Taylor*, 121 Misc. 7; affd., 209 App. Div. 299; affd., 239 N. Y. 582.) By this disposition these legacies do not escape taxation for they become taxable in the estate of the donor in a proper proceeding. The amounts, however, of their respective shares must be eliminated from the gross estate of the decedent here and the tax recomputed. The *pro forma* order in this respect is, therefore, modified.

There remains for disposition the first ground of appeal. It is contended in the briefs of the appellants (1) that subdivision 7-a of section 249-r of article 10-C of the Tax Law, under which the appraiser included the appointed fund as part of this decedent's gross estate, did not permit such inclusion; (2) that if that section did authorize such inclusion it is violative of both Federal and State Constitutions since the State has attempted to tax property without due process of law by imposing a tax upon the exercise by the donee of a limited power of appointment; (3) that property passing under a limited power is not the property of the donee of the power and that by reason of the substitution by the Legislature in 1930 of an estate tax (Art. 10-C) in place of the former transfer tax (Art. 10) such property may not be included in the gross estate of the donee of the power; and (4) that if the fund be held taxable there should be deducted therefrom the value of the life estate of this decedent. All these contentions and the entire ground of appeal are overruled.

It is unnecessary to discuss at length the principles applicable to the taxation of powers of appointment which have been so clearly fixed by the Court of Appeals. These well-established rules dispose of many of the arguments of the appellants. Briefly stated these rules are as follows: (1) The property passing under the exercise of a power of appointment is taxable in the donee's estate; (2) regardless of any technical question as to the donee's title it is the donee's exercise of the power that renders it taxable in his estate; (3) it is the exercise of the power rather than the creation thereof which effected the transfer and, therefore, no transfer is taxable until the power is exercised, or it is found that default in exercising the power has actually occurred; (4) the exercise of the power is taxable in the donee's estate even though at the time of the creation of the power there was no law in force taxing such transfers; (5) the Court of Appeals has drawn no distinction between *general* and *limited*

powers of appointment and the latter are taxable in the donee's estate, when exercised; and (6) it is only where the donee of the power fails to exercise it that the fund or property subject to the power is referred back to the donor's estate for taxation.

Under the Transfer Tax Law prior to 1897, property passing, pursuant to the exercise of a power of appointment, was taxable only in the estate of the donor. (*Matter of Stewart*, 131 N. Y. 274.) That policy was changed by chapter 284 of the Laws of 1897, which provided for the taxation of such property in the estate of the donee. This modification was accomplished by the addition of subdivision 5 to section 220 of the Tax Law (enacted April 16, 1897). It was in effect at the date of death of Cornelius Vanderbilt on September 12, 1899. Subdivision 5 provided: " Whenever any person or corporation shall exercise a power of appointment derived from any disposition of property made either before or after the passage of this act, such appointment when made shall be deemed a transfer, taxable under the provisions of this act in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will."

Thereafter the Legislature by chapter 76 of the Laws of 1899 (in effect March 14, 1899) amended section 230 of the Tax Law to provide: " When property is transferred in trust or otherwise, and the rights, interests or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall be imposed upon such transfer at the highest rate which, on the happening of any of said contingencies or conditions, would be possible under the provisions of this article, and such tax so imposed shall be due and payable forthwith, out of the property transferred."

The Court of Appeals held that the latter amendment in no way affected or repealed subdivision 5 of section 220 set forth above. (*Matter of Howe*, 176 N. Y. 570.) At the date of death of Cornelius Vanderbilt, therefore, the Tax Law specifically provided for the imposition of the tax in the donee's estate in the event that the power was exercised. In the exaction of a tax under this section, the court did not differentiate between general and limited powers of appointment. The leading authorities have sustained the taxability of a limited power. (*Matter of Vanderbilt*, 50 App. Div. 246; affd., 163 N. Y. 597; *Matter of Dows*, 167 id. 227; sustained *sub nom.* *Orr* v. *Gilman*, 183 U. S. 278; *Matter of Howe, supra; Matter of Delano*, 176 N. Y. 486; *Matter of Wendel*, 223 id. 433.) The tax was imposed in the donee's estate even though at the time the power was created there was no law in force taxing such transfers. (*Matter*

*of Vanderbilt,* 50 App. Div. 246; affd., 163 N. Y. 597; *Matter of Dows, supra.*) The same treatment was accorded powers created by deeds executed long before the existence of any transfer tax law. (*Matter of Delano, supra.*)

It will thus be seen that the contentions of the appellants in so far as they question the condition of the law existing at the date of death of Cornelius Vanderbilt in 1899 are without support in the authorities. A *limited* power of appointment was taxable in the donee's estate. Taxation was postponed until the death of the donee. The constitutional authority of the State to tax had been sustained by the United States Supreme Court in *Chanler* v. *Kelsey* (205 U. S. 466, sustaining *Matter of Delano,* 176 N. Y. 486; *Orr* v. *Gilman,* 183 U. S. 278).

The addition of the appointed fund here to the individual property of Mrs. Vanderbilt was, therefore, proper.

Equally untenable is the contention of the appellants that the order which fixed the tax in the estate of Cornelius Vanderbilt is *res judicata.* It is asserted in this connection that the failure to include a specific provision in the order in that estate suspending taxation until the death of the donee, was a complete and final adjudication that the appointive fund was forever exempt from taxation. It is also asserted that the Court of Appeals in its decision on the appeal from that order in some way held the transfer to be taxable only in the estate of the donor. Both of these claims find no support in the applicable law or in the actual adjudications in the tax proceeding in Mr. Vanderbilt's estate.

Upon the first contention it has been the law of this State for many years that the omission in the appraiser's report or in the order entered thereon, of a provision suspending taxation of the remainder of a fund is not an adjudication as to the exemption of the estate of the donee where the power was exercised or an adjudication as to the exemption of the estate from future taxation in default of the exercise of the power. (*Matter of Naylor,* 189 N. Y. 556, affg. 120 App. Div. 738; *Matter of Duff,* 114 Misc. 309; affd., 196 App. Div. 969; *Matter of Goldenberg,* 187 id. 692; *Matter of Bucki,* 172 id. 455; *Matter of Seligmann,* 170 id. 837; *Matter of Carey,* 197 id. 566, affg. 115 Misc. 732 on opinion below; *Matter of Jesup,* 155 id. 846.) It was the practice in the Surrogates' Courts throughout the State after the enactment in 1897 of section 220, subdivision 5, to make a simple order taxing the actual transfers in the donor's estate. The existing law itself provided for taxation in the event of the exercise or non-exercise of the power. (*Matter of Howe, supra.*) The mention of postponement or suspension in the order was, therefore,

unnecessary. In 1899, when Mr. Vanderbilt died, there was no specific provision for suspension in the statute. That provision came into the law in 1911 (Laws of 1911, chap. 800, in effect July 28, 1911) with respect to taxing contingent remainders and suspending the tax until the actual eventuality became fixed. These amendments and the cases which construe them, however, have no application to the present estate except as historical interest. (*Matter of Zborowski*, 213 N. Y. 109; *Matter of De Cordova*, 199 App. Div. 492; affd., 234 N. Y. 514.) In *Matter of Duff, Matter of Naylor* and *Matter of Goldenberg*, cited above, there was no express provision for suspension in the original order but its absence in each of these cases was held not to preclude the fixation of the tax in subsequent years under statutory authority. It is stated in *Matter of Goldenberg (supra)* that the circumstance that the order is silent as to a transfer or estate does not bar the parties interested from asserting their right in a subsequent proceeding " for the only matters that are *res judicata* are those embodied in an order or judgment and not those omitted therefrom." (187 App. Div. 692, at p. 696.)

Here, taxation of the remainder was properly held in abeyance and the mere statement in the appraiser's report of the valuation of the remainder of the fund was sufficient to indicate that the right to tax was reserved by the State for future determination. The defense of *res judicata* is not available to the executors or legatees on this phase of the case.

Upon the alternative ground urged as *res judicata*, neither the record in *Matter of Vanderbilt* (172 N. Y. 69), nor the determinations of the lower courts, nor the decision of the Court of Appeals, sustain the executors' contentions that the final determination in that proceeding is conclusive in the present proceeding. The Court of Appeals did not hold that a tax should have been imposed in the donor's estate upon the appointive fund. There is no indication whatsoever in its opinion that the transfer was declared taxable in that estate. The appeal of the State Comptroller whereby he sought to tax the appointive fund presently in the donor's estate was abandoned before the case reached the Court of Appeals. The final determination of that court did not affect the fund involved in this proceeding. It was the residuary trust fund that was considered, which, as stated by Chief Judge CULLEN in his analysis of the *Vanderbilt* decision, in *Matter of Burgess* (204 N. Y. 265, at p. 269) contained " no power of appointment." The decision only sustained the validity of section 230 of the Tax Law and held that under its provisions the tax on the contingent residuary

interests was immediately payable out of the estate to be computed at the highest rate at which under any contingency the property might be taxable.

Undoubtedly, if the Court of Appeals had been asked to rule upon the alleged contradiction between the terms of section 230 and section 220 of the Tax Law it would have held in *Matter of Vanderbilt*, as it subsequently held in *Matter of Howe* (176 N. Y. 570) that the amendment of section 230 did not repeal or nullify the provisions of section 220. It would have held that property passing under a power of appointment should be taxed in the donee's estate as the section directed just as if the donee of the power was the owner of the property. It would have held further, just as it did in *Matter of Howe* (*supra*), that the remainders were not taxable until the death of the donee and the final ascertainment of exercise or nonexercise. Furthermore on the question of *res judicata* the order entered in the Surrogate's Court on the remittitur of the Court of Appeals and upon the stipulation of the parties contained no reference to the taxability of the appointive fund or its exemption. At the time of the preparation and entry of that order there must have been a complete and proper understanding by the attorneys, both for the State and the estate, of the reservation of the right of the State to tax in a subsequent proceeding.

The remaining contention of the appellants involves the interpretation of subdivision 7-a of section 249-r of the Tax Law and its applicability to the estate of the donee. That section provides in general as to the manner of the valuation of the gross estate and in particular for the inclusion within it of certain special types of property. The opening sentence of the section reads: " Gross Estate. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." Then follow the enumeration and description of the special kinds of property. Subdivision 7-a of the section reads: " To the extent of any property passing under a power of appointment exercised by the decedent (a) by will, * * * exclusive of property the value of which is required to be included in the gross estate pursuant to paragraph numbered seven of this section, and provided that the transfer of such property is not or was not subject to a death tax in the estate of the grantor of such power but would have been so taxable except for a statute providing that the tax on the transfer of such property should be imposed in the estate of the grantee of such power in the event of the exercise thereof." The history of this enactment throws light upon its meaning. When the Decedent Estate Commission, in co-operation with the State Tax Commission,

drafted the new Estate Tax Law, the context and policies followed in great part those of the Federal Estate Tax Acts. The recommendation of the two Commissions was adopted by the Legislature and became article 10-C of the Tax Law. It became effective on September 1, 1930. Prior to that date section 220 of the Tax Law authorized the imposition of a tax in the donee's estate upon the exercise of a power of appointment whether general or limited. The new Estate Tax Law, beginning at the date mentioned above, imposed a tax in the donee's estate only upon the exercise of a *general* power of appointment. Such was the Federal policy. Limited powers were exempted from taxation by the omission of any express statutory authority to tax them.

In respect of the policy of New York State to tax limited powers in the estate of the donee it was apparent that the terms of the new statute of 1930 substantially changed the previous rule and permitted such powers to escape taxation in the donee's estate. Thereupon the State Tax Commission drew the provisions of subdivision 7-a to supplement subdivision 7 which taxed only general powers. The new subdivision 7-a became effective on March 21, 1932. Mrs. Vanderbilt died on April 22, 1934. If her death had occurred between September 1, 1930, and March 21, 1932, the fund here would have been free from taxation. Its succession could not have been taxed in the donor's estate, because the statutory provisions in existence at the date of Cornelius Vanderbilt's death made it taxable, if the power was exercised, only in the estate of the donee. (§ 220.) It could not have been taxed as part of the estate of Mrs. Vanderbilt because it was a limited or special power and its succession was exempt. An explanatory memorandum of the State Tax Commission prepared at the time of the drafting and introduction of the legislative bill has been submitted to the surrogate by consent of the parties. It is illuminative of the reasons which led to the enactment of new subdivision 7-a. The State Tax Commission pointed out that the existing law in 1932, prior to the enactment of the subdivision, permitted the fund to escape taxation in both the estate of the grantor and the estate of the grantee of the power. It was stated in reference to the measure: " This bill provides that property transferred by the exercise of a special or limited power of appointment shall be included in the decedent's gross estate for the purpose of the present estate tax in the event it is not taxable or has not been taxed in the estate of the grantor of the power and thus insures that one death tax will be imposed upon such property."

Entirely aside from this memorandum, as I construe the legislative intent in the enactment of the subdivision, it provided for the

inclusion in the gross estate of the donee of property passing under a special or limited power of appointment under the exact terms of the power exercised by Mrs. Vanderbilt and given to her under the will of her husband. The subdivision may be paraphrased as follows: (1) If the original grantor's estate was subject to a tax and impliedly that tax had been paid, no further tax would be imposed under the terms of the subdivision in the donee's estate; (2) if the estate of the grantor would have been taxable except for a statute, which provided that the tax on the transfer of the property should be imposed in the estate of the grantee, taxation of the fund under the subdivision must be enforced in the grantee's estate when the power is exercised.

This latter statement covers the exact situation in Cornelius Vanderbilt's estate. If section 220 had not been in existence the tax would have been imposed under section 230 upon the appointed fund in his estate. The application of section 220 provided the alternative mentioned in subdivision 7-a for the assessment of the tax in the grantee's estate and exempted the estate of Mr. Vanderbilt from taxation in the event of the exercise of the power. It should be noted in this aspect of the case that counsel for the appellants in their briefs have overlooked those decisions which have held that in default of the exercise of the power, a tax could have been imposed validly in the estate of the grantor. (*Matter of Naylor*, 189 N. Y. 556; *Matter of Duff*, 114 Misc. 309; affd., 196 App. Div. 969, on the opinion of the surrogate; *Matter of Goldenberg*, 187 id. 692.)

Moreover, *Matter of Burgess* (204 N. Y. 265), cited by them, instead of supporting their claims, sustains the opposite conclusion reached by the surrogate. That case only applied to a power that was contingent, because the right to appoint given by the terms of the will was subject to such conditions that it might never come into existence. In that case the present taxability in the donor's estate was, therefore, sustained. There were certain trusts, however, in the estate where the powers were vested and not contingent. The court held that the funds affected by such powers were not presently taxable. Taxation was postponed until exercise and was necessarily required to be assessed in that event in the donee's estate.

The power given by Mr. Vanderbilt to his wife was a *vested* power and not a *contingent* power. It was subject to no conditions or contingencies except the choice of his wife to exercise it or not. The latter privilege did not affect the inherent nature of the power as absolutely vested in her. *Matter of Burgess (supra)* is, therefore, authority for the conclusion reached by the surrogate.

Finally there is no unconstitutionality in the inclusion by the Legislature of a statutory declaration that a fund subject to a *limited* power shall be deemed to be part of the grantee's property. I have pointed out that the question of the constitutionality of the legislative authority to levy that form of taxation was set at rest many years ago by the United States Supreme Court. (*Chanler* v. *Kelsey*, 205 U. S. 466, sustaining *Matter of Delano*, 176 N. Y. 486; *Orr* v. *Gilman*, 183 U. S. 278, sustaining *Matter of Dows*, 167 N. Y. 227; *Matter of Zborowski*, 213 id. 109.)

It is the exercise of the power which is the basis of the authority to tax. The Legislature for taxing purpose has created artificial estates which include items clearly not owned in title or in fee by the decedent. Thus it has included by definition insurance on the decedent's life payable to a designated beneficiary and accruing only at the death of the insured. Irrevocable trusts, in which the decedent has only retained a life interest are included in the gross estate. Similarly, interests in *inter vivos* trust funds where the enjoyment is subject to change by the exercise by the decedent of a power to alter, amend or revoke are included. The privilege to transmit the appointed fund by will is one conferred by the State. By taxing the privilege the Legislature in its exactments violates neither the Federal nor State Constitution.

It is within the authority of the Legislature not only to declare the appointive property to be a part of the estate of the grantee, but also to make the passing of such property subject to the rates of tax in force at the date of death of the grantee; to provide for the exemptions to certain relations and charities at that time and not at the time of the death of the grantor; to fix the rates of tax based upon the relationship of the beneficiaries to the donee and not to the donor; to combine the individual property of the donee with the appointed property in order to compute the rate of tax; to tax the property in its character, realty or personalty, as it exists at the date of death of the donee and to fix its value as of that date rather than at the date of death of the grantor. (*Matter of Dows*, 167 N. Y. 227; *Matter of Sandford*, 250 App. Div. 310; *Matter of Rogers*, 71 id. 461; affd. on opinion below, 172 N. Y. 617; *Matter of Walworth*, 66 App. Div. 171; *Matter of Seaver*, 63 id. 283; *Matter of Duryea*, 250 id. 305; *Matter of Bucki*, 172 id. 455.)

For similar reasons, the statutes in existence at the date of death of the donee determine the amount of the appointive fund and whether it is to be taxed undiminished or diminished by the value of the life estate of the life tenant. The contention of the appellants that the value of the securities within the fund at the date of the death of Mrs. Vanderbilt — $5,935,572.07 — must be reduced by

the deduction of the value of her life estate is overruled. The statute in effect in 1934 at the date of her death made no provision for such deduction. The whole fund as it exists at the date of death of the donee must be included in the gross estate. Similar contentions as to parallel prior statutes have been overruled by the court. (*Matter of Bucki*, 172 App. Div. 455; *Matter of Seligmann*, 170 id. 837.) Since the law in effect at the date of the death of the donee applies, it is likewise immaterial whether the form of tax effective as of that date is a transfer tax or an estate tax. (*Matter of Wendel*, 223 N. Y. 433; *Matter of Keeney*, 194 id. 281; *Keeney v. New York*, 222 U. S. 525.)

The difference between the two forms of tax is inconsequential. Simplicity in the method of assessment was effected by the enactment of the Estate Tax Law in 1930. The ultimate charge of the tax against the respective shares is practically the same under both systems of taxation. When the Estate Tax Law was adopted by the Legislature there was also enacted as part of the general program, new section 124 of the Decedent Estate Law, which provides (in the absence of a contrary direction in the will) for the equitable apportionment and charging of the tax out of the benefits received by the respective legatees. The tax is imposed under either method upon the privilege to transmit the property by the will of the donee. The privilege may be given or withheld by the State.

The value of the diminished remainder set forth in the appraiser's report in the estate of Cornelius Vanderbilt and the order entered upon it is not conclusive here. The surrogate was without jurisdiction to fix the value of such remainder in that proceeding. The surrogate and the appraiser were limited to the valuation of the life estate. (*Matter of Naylor*, 189 N. Y. 556, affg. 120 App. Div. 738; *Matter of Bucki*, 172 id. 455, 457; *Matter of Seligmann*, 170 id. 837.)

Submit order on notice overruling the first ground of appeal and sustaining the second ground of appeal and modifying the order fixing the tax in accordance with the provisions of this decision.