[Civ. No. 10992. First Appellate District, Division One.—May 15, 1939.]

In the Matter of the Estate of JOHN B. ELSTON, Deceased. A. C. WYCKOFF, Appellant, v. HARRY B. RILEY, as State Controller, etc., Respondent.

Clark, Nichols & Eltse for Appellant.

Louis Ferrari, Kenneth M. Johnson and I. A. Cereghino, as *Amici Curiae,* on Behalf of Appellant.

Alvin P. Jacobs, W. H. H. Gentry, Inheritance Tax Attorney, and T. H. Christiansen and James W. Hickey, Assistant Inheritance Tax Attorneys, for Respondent.

WARD, J.—This is an appeal from an order fixing inheritance taxes.

John B. Elston died on November 5, 1936, leaving an estate valued in the sum of $75,794.34. A holographic will, dated September 12, 1935, bequeathed a certain sum to a sanatorium and other amounts to three nieces and two strangers. It also provided as follows: "I appoint A. C.

Wyckoff my Executor without bond, he to receive 10% (ten percent) of personal property, and he to handle the residue of estate, if any, for the benefit of my relatives most in need.'' On October 30, 1936, by codicil, the following provision was made: ''It is intended and I provide that A. C. Wyckoff shall receive what is left to him in my said Will for acting as Executor thereof. As to the residue of my estate mentioned in my said Will, I leave the same in trust to said A. C. Wyckoff with the powers and for the uses and purposes and for the period herein specified. Said trustee shall have title to and hold and manage the trust estate, and to the extent required in the safe and prudent management thereof, invest and reinvest the same, keeping the trust property invested conservatively at all times. The net income of the trust shall be accumulated and added to the trust estate and shall be used and disposed of for the same purposes as the principal of the trust. My said trustee shall among my heirs determine those who, in view of their circumstances and conditions in life, are in need and distribute the trust property income and principal in proportion to such need, provided, however, that it is not intended that question shall be raised as to the exercise of discretion by my trustee. Said trustee is vested with a power of appointment to make distribution of said trust property as said trustee may determine. It is intended that said trust shall terminate in any event within the life of my said Executor, A. C. Wyckoff.'' Subsequent to admission of the will to probate and the issuance of letters testamentary, the court appointed an official tax appraiser to assess the inheritance tax. The report made certain deductions for funeral expenses, executor's commissions, attorney's fees, expenses of administration and federal estate tax in the total sum of $4,861.67, and fixed the clear market value of the estate at $70,932.67. After deduction of the bequests the amount of the residue was fixed in the sum of $52,932.67 and a tax assessed against legatee and donee Wyckoff on this amount as a single legacy at prevailing rates in the sum of $4,598.42. This ''residue'' included the gift to Wyckoff of ten per cent of the personal property amounting to $7,579.43 paid him in lieu of his regular commission of $1587.94, leaving his individual legacy $5,991.49, as well as the amount left to be used for the benefit of decedent's relatives.

The executor Wyckoff filed objections to the tax report, stating therein that ''By virtue of subdivision 6 of section 2

of the Act the amount of this gift was taxable to the extent it exceeded the legal commissions of an executor and no objection is made to this.'' This statement refers to the deduction of the adjudicated executor's fees from the ten per cent of the estate given under the terms of the will in lieu of commission for acting as executor. The objections in effect are that the value of the property left in trust to Wyckoff is added to the amount which actually passed to Wyckoff in his individual right, resulting in an increase of the total amount of the tax; that the tax upon the trust fund should have been computed and fixed in accordance with the highest contingency under the provisions of subdivision 4 of section 8 of the act; that subdivision 6 of section 2 as applied in the report is discriminatory and violates the state and federal Constitutions. The objections also set forth that the deceased left no father, mother, surviving wife or direct heirs; that his heirs consisting of four branches were either children or grandchildren of deceased brothers and sisters, twenty-five in number, who would have inherited but for the provision of the trust, and that the interests of these twenty-five heirs ranged from 1/12 to 1/72 of the residue of the estate.

This decision might be confined to the salient points presented upon appeal, namely, does the 1935 amendment to subdivision 6 of section 2 apply to a limited power in trust, and if so, is it discriminatory; but other contentions are urged, and it may be well to pass briefly upon them. The title of the act reads in part as follows: ''An act to be known as the 'Inheritance Tax Act of 1935', to establish a tax on gifts, legacies, inheritances, bequests, devises, successions, transfers, joint tenancies and insurance; to provide for its collection and to direct the disposition of its proceeds.'' (Stats. 1935, p. 1266.) The title provides for a ''tax'' on ''legacies'', ''transfers'', ''gifts'', etc., and the act varies the tax as it applies to particular kinds of legacies, etc., which is sufficient to indicate authority to impose a tax upon a legacy subject to a power of appointment.

Subdivision 6 of section 2 of the act of 1935 (Stats. 1935, p. 1269), applicable to this appeal, provides as follows: ''Whenever any person or corporation shall be given a power of appointment by virtue of any disposition of property made before or after the passage of this act, such gift of power

of appointment shall, under the provisions of this act, be deemed a taxable transfer made from the donor of said power to the donee thereof at the date of the donor's death.'' Appellant argues that subdivision 6 of section 2 is discriminatory, violates the state Constitution and denies equal protection of the laws under the Fourteenth Amendment of the federal Constitution (secs. 1 and 21, art. I, and sec. 25, art. IV, Const. Cal., and amendment 14, Const. United States), and also that the provisions thereof have no application to the present case, but that the tax should have been assessed to the trust beneficiaries under subdivision 4 of section 8, the highest contingency section. This section deals with contingent transfers generally and would apply to powers of appointment if other provisions of the act did not specifically apply to such powers. Subdivision 6 of section 2 treats particularly with powers of appointment, while the provisions of subdivision 4 of section 8 are general. (Code Civ. Proc., sec. 1859.)

Appellant seeks on this appeal to inject the question, was the tax an estate tax, and thereupon argues that if it was, it is void upon constitutional grounds, but respondent controller does not attempt to justify his position on any such theory. An estate tax is somewhat like an ordinary tax. The number of recipients of the property of the estate is immaterial. The tax is levied upon the valuation of the estate and is payable like any claim presented against the estate.

In determining the constitutionality of the present inheritance tax, the history of inheritance tax statutes in this state is enlightening. The 1905 act (Stats. 1905, sec. 1, p. 341) provided for a direct inheritance tax. The passing of property was deemed a passing from the donee's estate. The state was compelled to await the exercise or nonexercise of the power before a tax could be collected. The recipient of the gift did not pay until he actually received the property. This period might cover many years. In 1913, a provision similar to the 1935 amendment appeared. (Stats. 1913, sec. 3, p. 1068.) The legislature in 1917 (Stats. 1917, p. 880) decided that there should be a return to the 1905 form. Subsequent to the return in 1917 to the 1905 form, the Supreme Court of this state in *Estate of Murphy*, 182 Cal. 740 [190 Pac. 46], interpreting the 1911 Inheritance Tax Act, an

amendment to the 1905 act, based its opinion in part upon *Matter of Lansing,* 182 N. Y. 238 [74 N. E. 882]. The Lansing decision was predicated upon the election of the appointees to take under the donor's will. In the *Estate of Murphy, supra,* at page 745, the court said: "It is not necessary for us finally to determine whether this confirmatory clause amounted to the exercise of the power of appointment or is to be treated as a failure to exercise the power. In either event the result is the same." The Murphy decision appears to have caused some confusion in the minds of the administrators of the inheritance tax statute in this state, and accordingly they levied the tax in the estate of the donor under the highest contingency provision of subdivision 3 of section 8 of the 1921 act. (Stats. 1921, p. 1508.) If the power was exercised, the tax paid from the donor's estate was refunded, and a tax fixed in the estate of the donee.

In 1929 (Stats. 1929, p. 1836), subdivision 6 of section 2 of the act provided as follows: "Whenever any person, trustee or corporation shall exercise the power of appointment derived from any disposition of property made either before or after the passage of this act, such appointment, when made, shall be deemed a transfer taxable under the provisions of this act, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power, and had been bequeathed or devised by such donee by will." This amendment, unlike the 1905 act, did not contain the provision that the effect of the non exercise of the power should be treated as a passing in the donee's estate. Under the 1929 act no definite way of estimating the failure to exercise the power of appointment by the donee could be ascertained. Finally in 1935 the present act was passed, fixing the tax payable on a transfer subject to a power of appointment in the donor.

This history has been recited to indicate that the present act is not the result of hasty action arbitrarily assessing an inheritance tax that, as will hereafter appear, may not perfectly fit every exigency that may arise, but is a return after trial and due consideration to the provisions of an act that was once discarded but now resurrected and approved. Whether the present act, within the sphere of its operation, subjects all persons under like conditions to the same rule is the real test of its natural, necessary or intrinsic

qualifications, bringing it within or without recognized constitutional prohibitions. "What may reasonably be done under a statute is the test of its validity." (*Abbott* v. *McNutt*, 218 Cal. 225, 230 [22 Pac. (2d) 510, 89 A. L. R. 1109].)

To declare a tax act unconstitutional, something more than mere discrimination must appear. The right to impose taxes for the conduct of government is based upon a necessity. Encroaching restrictions often occur. It seems impossible to write a tax law that will not place a burden upon one and give an advantage to another. Hence the generally accepted rule that the discrimination must be unlawful, that is, it must be unreasonable to the extent that it contravenes constitutional rights. The legislative body cannot see in advance all of the contingencies that may arise, but in the passage of subdivision 6 of section 2 of the Inheritance Tax Act of 1935, it must have been apparent to the legislative body that the opportunity to decrease the tax, under a power of appointment to dispose of property, was possible by designating more than one donee. If the legislature in its wisdom decided that such a method was natural and just, and a more advantageous and workable system than any other, then the state cannot object if a testator devises a legitimate means of reducing the amount of the tax. This opportunity is open to all testators. The testator cannot bind the state but he may advise that a tax be taken, for instance, from income instead of principal. If feasible the state will follow directions. (*In re Matthews' Will*, 225 App. Div. 80 [5 N. Y. Supp. (2d) 707].) A testator might decrease the tax by naming certain near relatives for direct bequests in large amounts to the exclusion of distant relatives, and thereby decrease the total tax. If the inheritance tax is reasonably uniform as to the recipients named in the testamentary document, no complaint may justly be made. In *Estate of Watkinson*, 191 Cal. 591, 599 [217 Pac. 1073], the court said: "In their petitions and briefs upon rehearing and upon oral argument thereon, appellants and *amici curiae* earnestly insisted that the act in question was discriminatory and therefore void, in that it required residuary legatees to pay a larger inheritance tax in proportion to the value of the estate to which they succeeded than was required of other legatees, even though they be all of the same degree of relationship to the testator. The answer to this contention is twofold, the first be-

ing that the act does have a uniform operation, since it applies alike to all residuary legatees, and the second being that any disparity between the net amounts received by different legatees by reason of the operation of the act must be deemed to be chargeable to the testator rather than to the law. The testator is deemed to know the law, and therefore, when in making his will he names one as a specific legatee and another as a residuary legatee, he must be deemed to have intended thereby that the latter should be charged with the amounts required to be paid for the federal tax." (*Amoskeag Trust Co.* v. *Trustees of Dartmouth College,* (N. H.) [200 Atl. 786, 117 A. L. R. 1186].)

■ We can find no constitutional or other inhibition against the policy of taxing a transfer subject to a power of appointment. The validity of powers of appointment is recognized in California. In *Estate of Davis,* 13 Cal. App. (2d) 64, 69 [56 Pac. (2d) 584], the court said: "Whatever doubt has heretofore existed with respect to the validity of powers of appointment in California (21 Cal. Jur., p. 428, sec. 7; 13 Cal. Law Review, 1) has apparently been effectually dissipated by the very recent decision in *Estate of Sloan,* 7 Cal. App. (2d) 319 [46 Pac. (2d) 1007], in which a hearing was denied by the Supreme Court." If there is no transfer, there is no tax, but if there is a succession of beneficial interests, states, without infringement upon the Fourteenth Amendment of the federal Constitution, may determine whether the property for inheritance tax purposes may be dealt with as passing from the estate of the donor of the power, or from the estate of the donee of the power (*Orr* v. *Gilman,* 183 U. S. 278 [22 Sup. Ct. 213, 46 L. Ed. 196]), but both rules may not be employed under identical conditions by the same state. (*Binney* v. *Long,* 299 U. S. 280 [57 Sup. Ct. 206, 81 L. Ed. 239].) The state may determine where the tax may fall. (*Young Men's Christian Assn.* v. *Davis,* 264 U. S. 47 [44 Sup. Ct. 291, 68 L. Ed. 558].) ■
A power of appointment is a delegation by the donor, in the disposition of his property, to the donee who does not become the owner and holds only as trustee. The power in and of itself does not grant an absolute interest, though the donee may have an estate interest in addition to the power of appointment. (49 Cor. Jur., p. 1276.) The power of appointment may exist in conjunction with a transfer in trust

or be independent of the transfer. Ordinarily under the terms of a power of appointment, which is limited in its scope, the donee is limited in the exercise to the class designated, or limited by direction that the power shall not be exercised in favor of a designated group. The trustee and the donee need not be the same person. In the instant case it is a limited power in trust, in which the trustee of the trust is likewise the donee of the power in trust. In California no prohibition appears in the statute respecting taxation between general and limited powers of appointment.

■ The legislature has the right to determine whether or not transfers through the means of power of appointment may be the subject of inheritance taxes. (*In re Vanderbilt's Estate,* 163 Misc. 667 [297 N. Y. Supp. 554], see, also, 255 App. Div. 756 [7 N. Y. Supp. (2d) 647].) If this principle is adopted, the legislature may provide reasonable rules, rates and exemptions for its execution. If the transfer under the power of appointment may be taxed as a transfer *from* the donee of the power, we can see no reason why a tax may not be imposed upon the transfer *to* the donee. The power of appointment is not taxed, but rather the transfer of the property subject to the power of appointment.

A tax may be different on a transfer of the same value if the circumstances differ. (*Estate of Watkinson, supra; Stebbins* v. *Riley,* 268 U. S. 137 [45 Sup. Ct. 424, 69 L. Ed. 884, 44 A. L. R. 1454].) In California under the present statute a rate of taxation is fixed on transfers in the estate in which they would be taxed if the statute made no mention of powers of appointment. There seems to be no unfairness in a requirement that all transfers should be taxed immediately and finally on the death of the owner of the property transferred. (*Wachovia Bank & Trust Co.* v. *Lambeth,* 213 N. C. 576 [197 S. E. 179, 117 A. L. R. 117].)

■ We cannot agree with the correctness of the lower court order taxing the independent gift by adding its value to the amount of the estate transferred through the power of appointment. Subdivision 10 of section 2 of the 1935 act (Stats. 1935, p. 1270) reads: "When more than one transfer within the meaning of any of the preceding subdivisions of this section has been made, either before or after the passage of this act, by a decedent to one person, the tax shall be imposed upon the aggregate market value of all of the property

so transferred to such person in the same manner and to the same extent as if all the property so transferred were actually transferred by one transfer made at the date of the transferor's death and with the value, rates and exemptions as of that date.'' Subdivision 6 is manifestly a preceding section, and subdivision 10 may be applicable under certain conditions, such as a direct gift to a legatee, and an additional, outright bequest as a residuary legatee to the same person. There seems to be no inequitable adjustment of taxes under such a state of facts. The two bequests are merely united so that the tax represents the assessment against the total value of the property received by one person. But this raising of the amount of the tax from the lower bracket, if each bequest should be taxed separately, to the higher amount wherein the bequests are united, assumes that the one person receives the property in temporary or permanent ownership, with a right to enjoy some emolument or remuneration or the acquisition of a valuable benefit. .

In the instant case, the donee under the transfer of the power of appointment may enjoy whatever benefits can be derived from the authority to invest the residuary estate and to determine the appointees under the transfer power, but he may not under this particular instrument use any part of the residuary estate for his personal use and advantage. The power of appointment is not only a benefit, but it may be a burden. The independent gift may in whole or in part recompense Wyckoff for the burden assumed. If the independent gift is not sufficiently compensatory, Wyckoff could act as trustee for a period and then refuse to continue and still possibly be entitled to the independent gift. Wyckoff was to ''receive what is left to him in my said Will for acting as *Executor* thereof''. (Italics ours.) The tax from the residuary trust estate is paid from the funds of the estate and not by Wyckoff individually, but when the amounts are united a higher tax is imposed, which forces Wyckoff to pay an additional amount from his personal estate or to take an additional amount from the residuary estate, which decreases the proportionate share of the twenty-five heirs. ▇ This method of uniting the two items in effect penalizes executor and legatee Wyckoff for the acceptance of the position of trustee. Only those discriminated against may complain of a discriminatory law. Wyckoff objects to the addition of the two items. All taxing must be on some rational basis.

(*Stewart Dry Goods Co.* v. *Lewis,* 294 U. S. 550 [55 Sup. Ct. 525, 79 L. Ed. 1054].) We think this is inequitable to Wyckoff or the heirs, and that it is an unlawful discrimination that requires not a reversal, but a modification. Accordingly the order fixing the inheritance tax will stand modified and the trial court is directed to make such necessary alterations in the various items as are necessary to conform to the views expressed herein. As modified, the order will stand affirmed.

Knight, Acting P. J., concurred.

On June 6, 1939, the District Court of Appeal modified the opinion and judgment to read as above. A petition for a rehearing of this cause was denied by the District Court of Appeal on June 12, 1939, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 3, 1939.