[L. A. No. 8224. In Bank.—July 30, 1925.]

In the Matter of the Estate of CAROLINE FRANCES DILLINGHAM, Deceased. RAY L. RILEY, as Controller, etc., Appellant, v. WILHELMINA PLATZ et al., Respondents.

[1] INHERITANCE TAX — WILLS — TRUSTS — STOCK HELD IN ANOTHER STATE.—Where a resident of this state created a trust, the *corpus* of which consisted of shares of stock in a corporation organized in another state, and the certificates of stock were turned over to a trustee in such other state, under a trust instrument which provided that the trustee should remit the net income to the trustor during

---

1. Inheritance tax on property covered by power of appointment, notes, 33 L. R. A. (N. S.) 236; L. R. A. 1918D, 339; 18 A. L. R. 1470; 23 A. L. R. 738.

her lifetime, that the trustor reserved the right to revoke the trust and secure an accounting and a reconveyance of the property, by notice in writing of said revocation, and that upon the death of the donor the trust should terminate and be closed and the trust property distributed and conveyed to the executor or administrator of the estate of the trustor, and said trustor died a resident of this state, without having revoked said trust, but having left a will in which she named an executor in this state, and in which she disposed of the stock held subject to said trust, share by share, and which was probated in this state, the decedent died "possessed" of said stock held subject to said trust and she transferred the same by her last will and testament to the persons therein designated, within the meaning of section 2 and subdivision 1 of the Inheritance Tax Act of 1921 (Stats. 1921, p. 1500).

[2] ID.—"SEIZED" OR "POSSESSED"—TRANSFERS LIABLE TO TAX.—The words "seized" and "possessed," as used in the Inheritance Tax Act of 1921, are used disjunctively and not conjunctively; and a transfer is liable for taxation if the testatrix died "possessed" of the property or any interest therein, regardless of whether or not she died "seized" of the property.

[3] ID.—MEANING OF "POSSESSED"—OWNERSHIP SHORT OF SEIZIN.— While "possessed" is a variable term and has different meanings as it is used in different circumstances, and it may, for example, imply no more than a corporal having, it was not used in the Inheritance Tax Act of 1921 in the sense of mere "corporal having," but with the intent to indicate a character of ownership falling short of seizin.

[4] ID. — PRIVILEGE OF SUCCEEDING TO PROPERTY — CONTRIBUTION TO STATE.—The theory upon which the inheritance tax is imposed and sustained is that the state which confers the privilege of succeeding to property may attach thereto the condition that a portion of the property shall be contributed to the state.

(1) 37 Cyc., p. 1565, n. 37.   (2) 37 Cyc., p. 1560, n. 3.   (3) 37 Cyc., p. 1556, n. 77.   (4) 37 Cyc., p. 1553, n. 60.

APPEAL from a judgment of the Superior Court of Los Angeles County fixing inheritance tax. Frank R. Willis, Judge. Reversed.

The facts are stated in the opinion of the court.

Ralph W. Smith, State Inheritance Tax Attorney, Adrian C. Stanton, Edwin P. Werner and George S. Dennison, Assistant Inheritance Tax Attorneys, for Appellant.

4.   See 26 R. C. L. 199; 24 Cal. Jur. 421.

J. W. Morin and James S. Bennett for Respondents.

LENNON, J.—Caroline Frances Dillingham died testate on January 30, 1922, a resident of Los Angeles County, state of California. On or about the twenty-first day of February, 1921, and while she was residing in said county, she created a trust, the *corpus* of which consisted of 900 shares of the preferred capital stock and two shares of the common capital stock of the Dillingham Manufacturing Company, a Wisconsin corporation. The certificates of stock were turned over to the First Wisconsin Trust Company, a Wisconsin corporation, as trustee, and held by it subject to the terms and conditions of the trust instrument duly executed by her.

The provisions of the trust instrument pertinent to the point presented in support of the appeal are as follows:

"The trustee shall at convenient intervals remit to the donor the net income of said trust over and above its charges and expenses, so long as she shall live.

"Donor reserves the right to revoke this trust and to secure an accounting from the trustees and a reconveyance to her of the *corpus* and undistributed income of the trust after deduction of trustee's credits, by notice in writing of said revocation. The trustee shall have a reasonable time to prepare and render its account to the donor and to reconvey the assets of the trust, including the *corpus* and undistributed income over and above its credits, to the donor. In the meantime during the lifetime of the donor and while this trust is unrevoked, the only right, title or interest of the donor in the property, the subject matter of this trust, is the right to receive such net income as shall be derived therefrom and a right to an accounting from time to time from the trustee.

"Upon the death of the donor the trust hereby created and defined shall terminate and be closed. The trustee shall distribute and convey the trust fund and any undistributed income thereof after its deductions, to the executor or administrator of the said donor, appointed and duly qualified."

This trust was never revoked by Caroline Frances Dillingham during her lifetime. It continued in existence up to the time of her death, and the stock, which was the *corpus* thereof, was at the time of her death held by the First Wis-

consin Trust Company, as trustee under said trust. On March 7, 1922, the last will and testament of Caroline Frances Dillingham, together with three codicils thereto, were admitted to probate in said county, and letters testamentary were on said day issued to the First Trust and Savings Bank of Pasadena, which said institution was appointed executor of the last will and testament of said deceased. In the third codicil to her last will and testament the testatrix disposed of the Dillingham Manufacturing Company stock, held subject to the Wisconsin trust, share by share.

The inheritance tax appraiser, in her "Report of Inheritance Tax Appraiser" filed in the estate proceeding, taxed the persons receiving the Dillingham Manufacturing Company stock upon the value of the amount or number of shares of stock received by each. Objections to the report of the inheritance tax appraiser were filed and a hearing was had thereon. Upon said hearing the court found that at the death of Caroline Frances Dillingham the said First Wisconsin Trust Company of Milwaukee, and not Caroline Frances Dillingham, was seized and possessed of the preferred capital stock, and two (2) shares of the common capital stock of said Dillingham Manufacturing Company. The court further found that "said beneficial interest in the trust of said First Wisconsin Trust Company of Milwaukee, Wisconsin, was not property of which Caroline Frances Dillingham was seized or possessed at the time of her death, and was not property within the state of California, at the time of the death of said decedent and did not pass to said legatees mentioned in her last will and testament and the codicils thereto or any of them under the laws of the State of California, but passed to said legatees under the laws of the State of Wisconsin and by the transfer to them of said shares of stock by said First Wisconsin Trust Company of Milwaukee in the State of Wisconsin." Pursuant to said findings the court decreed as follows: "That a decree fixing inheritance tax be made, wherein it is ordered, adjudged and decreed that the transfer of said shares of stock from said trustee to the beneficiaries named in the last will and testament of said Caroline Frances Dillingham is not a taxable transfer under the laws of the State of California, and more particularly the Inheritance Tax Act of

the State of California, chapter 821, Statutes 1921.'' This appeal is taken from the decree made and entered by said court determining the amount of inheritance tax on the shares or interest in said estate and ordering a refund of the $4,855.91 paid by the executor of the estate, in the course of administration, as inheritance tax upon the transfer of the aforesaid shares of stock.

Upon the hearing of the objections to the report of the inheritance tax appraiser in the lower court no oral evidence whatever was offered or received, but all of the files, records, and papers in the estate were introduced in evidence. A search of the record before us fails to reveal any evidence to support the finding of the court to the effect that the said shares continued to be owned by and to stand in the name of said First Wisconsin Trust Company of Milwaukee, until the same were transferred by said company to the order of the persons designated in the codicil of the last will and testament of said Caroline Frances Dillingham. Nor is there to be found any evidence supporting the finding of the court below that the executors of the last will and testament of Caroline Frances Dillingham did not at any time take possession of the said shares of stock, or the certificates representing the same. The only evidence contained in the record upon this phase of the case is contrary to the findings. It is found in the "First and Final Account, Report and Petition for Distribution," in which the First Trust and Savings Bank of Pasadena, California, as executor of the estate of Caroline Frances Dillingham, deceased, represents itself as chargeable with the shares of the preferred and common stock of the Dillingham Manufacturing Company "issued in the name of First Trust & Savings Bank of Pasadena, California, Executor of the Estate of Caroline Frances Dillingham, deceased." It would seem, therefore, that the finding upon this particular phase of the case is not supported by the evidence adduced upon the hearing of the objections to the report of the inheritance tax appraiser, and that the evidence does show that the certificates of stock in question were, subsequent to the death of Caroline Frances Dillingham, and during the course of the administration of her estate, indorsed over, by the First Wisconsin Trust Company, to the First Trust and Savings Bank of Pasadena, California, executor of the

estate of Caroline Frances Dillingham, deceased, and new stock certificates issued to and in the name of said executor.

[1] The question presented here ·for determination is whether Caroline Frances Dillingham, under the facts hereinbefore stated, was "seized or possessed" of the nine hundred (900) shares of the preferred capital stock and two (2) shares of the common capital stock of the Dillingham Manufacturing Company, held by the First Wisconsin Trust Company subject to the trust created by her, and did transfer the same by her last will and testament to the persons therein designated, within the meaning of section 2 and subdivision 1 of the Inheritance Tax Act of 1921. (Stats. 1921, c. 821, p. 1500.)

Said section and subdivision read as follows:

"Sec. 2. A tax shall be and is hereby imposed upon the transfer of any property, real, personal or mixed, or of any interest therein or income therefrom in trust or otherwise, to persons, institutions or corporations, not hereinafter exempted, to be paid to the treasurer of the proper county, as hereinafter directed, for the use of the state, said taxes to be upon the market value of such property at the rates hereinafter prescribed and only upon the excess over the exemptions hereinafter granted in the following cases:

"(1) When the transfer is by will or by the intestate or homestead laws of this state from any person dying seized or possessed of the property while a resident of the state, . . ."

It is conceded at the outset by appellant that during the period of the trust, the legal title to the property was in the trustee and that at the time of the death of Caroline Frances Dillingham she was not "seized" of the trust property within the meaning of the above provision of the California law. Appellant maintains, however, that Caroline Frances Dillingham was "possessed" of the property, within the meaning of said provision, because she owned the entire beneficial interest in the property which was the *corpus* of the trust—the right to receive the income thereon, until the trust was terminated, the right to terminate the trust at pleasure, and in addition the right to dispose of the *corpus* by will, which right she exercised and accomplished through the third codicil to her last will and testament. In this behalf appellant argues that immediately upon the death

of the testatrix, when the will took effect and the trust terminated, the beneficial interest, transmitted and transferred by her, ripened into a perfect legal title to the property in question by reason of the fact that at that moment the trust terminated and the legal title no longer stood in the trustee and that the actual transfer under the third codicil of the will of decedent's beneficial interest in and to the trust property carried with it the legal title to the property, the trust having been terminated thereby and the trustee divested of the legal title to said property.

[2] The words "seized" and "possessed" as used in the provision of the Inheritance Tax Act of 1921 governing and controlling in the instant case are used disjunctively and not conjunctively, the act reading "seized or possessed." The transfer is therefore liable for taxation if the testatrix died "possessed" of the property, regardless of whether or not she died "seized" of the property. It is to be noted that the transfer which is subject to the tax is not only the transfer of the legal title to the property, but also "any interest therein."

[3] "Possessed" is a variable term and has different meanings as it is used in different circumstances. It may, for example, imply no more than a corporal having. On the other hand, it is commonly employed to indicate ownership of any kind of property. Having in mind the nature and purpose of the statute under discussion the word "possessed" could not have been used in the sense of mere "corporal having," for obviously no tax could have been intended to be levied on a mere transfer of actual physical possession. Webster's New International Dictionary gives the definition of the verb "possess" as "to have and to hold as property, to have a just right; to be master of, to own. . . . " It was in this sense, we think, that the word "possessed" was used in the instant case, with the intent to indicate a character of ownership falling short of seizin. Used in that sense there can be no escape from the conclusion, it seems to us, that Caroline Frances Dillingham at the time of her death was possessed of an interest in the property transferred by her will. She owned exclusively every beneficial interest therein, immediate and prospective. She had the control over the whole beneficial interest. She had the absolute right of ownership, both legal and beneficial, if

she chose to revoke the trust. In short, she had not only an interest in the income from the property, but she, as creator of the trust with a reservation of the right of revocation, had a beneficial interest in the *corpus* of the trust itself.

It was not, we think, the intention of the legislature to tax merely the transfer of property to which the transferor had legal title and exempt from taxation property which was temporarily held in trust by another for his exclusive use and benefit. Such a construction would open up an easy way for the evasion of taxes and prevent the collection of any inheritance tax by the state. Such a construction would lead to the illogical result that property which the transferor owned and had in actual possession would be liable to a tax in the hands of the transferee regardless of the fact that the transferor might have encumbered such transfer by trust provisions and the transferee be entitled only to a beneficial interest in the property, whereas property of the transferor held subject to a trust for his exclusive use and benefit is not liable for the tax in the hands of a transferee, who by the transfer became entitled not only to a beneficial interest but to the legal interest as well.

[4] The theory upon which the inheritance tax is imposed and sustained is that the state which confers the privilege of succeeding to property may attach thereto the condition that a portion of the property shall be contributed to that state. (*Estate of Bowditch,* 189 Cal. 377, 379 [23 A. L. R. 735, 208 Pac. 282] ; *In re Wilmerding,* 117 Cal. 281, 284 [49 Pac. 181].) There can be no question in the instant case but that the transfer was accomplished through the third codicil to the testatrix's last will and testament. Indeed, it is conceded by respondents that "the property passed to the beneficiaries by a clause of the codicil." The testatrix, by the instrument of trust, designated her will, or in the case of her intestacy, the laws of succession of the state of California, as the source of title for the transferees. This was clearly the intent and purpose of the provision that, unless previously revoked by her, upon her death the trustee shall "distribute and convey the trust fund and any undistributed income thereof after its deduction, to the executor or administrator of the said donor." There is, therefore, in existence no other instrument other than the will passing or purporting to pass the interest of the testa-

trix to the transferees. There can be no question, it seems to us, therefore, but that the transfer of the property was accomplished by the will, the efficacy of which depended upon the authority of the state of California. In the ultimate analysis a necessary incident to the transfer of the interest depended for its efficacy upon the laws of the state of California, and was for that reason liable for the imposition by the state of a tax upon said transfer. (*Bullen* v. *Wisconsin,* 240 U. S. 625 [60 L. Ed. 830, 36 Sup. Ct. Rep. 473, see, also, Rose's U. S. Notes].)

The case at bar is distinguishable from the case of *Estate of Bowditch, supra,* cited by respondents in support of their contention. In the Bowditch case, one J. Ingersoll Bowditch died a resident of the state of Massachusetts, where his will was admitted to probate and his estate distributed. By his will certain personal property was bequeathed to Massachusetts trustees in trust, to pay the net income derived therefrom to Charlotte Bowditch during her life, and upon her death to convey the *corpus* and remainder of said property to such person or persons in such way or manner as said Charlotte Bowditch should direct in and by her last will and testament. The trustees, in accordance with this direction, paid the income from the property to Charlotte Bowditch during her lifetime, and, upon her death in California, where she had established her residence, transferred the property to certain persons named in her last will and testament. The court in that case held that inasmuch as the imposition of the inheritance tax was predicated upon the theory that the state required a compensation in the form of an inheritance tax for the privilege which it conferred of succeeding to the property, and no necessary incident of transfer depended for its efficacy upon the laws of California in that particular situation, the transfer made by Charlotte Bowditch was not taxable in California. As we have before indicated, the transfer in this case was dependent upon the laws of the state of California. In the Bowditch case the interest of the transferees was derived from the will of J. Ingersoll Bowditch, probated in Massachusetts. The will made by Charlotte Bowditch merely designated those entitled to take under the will of J. Ingersoll Bowditch. As pointed out in that case, had the will of J. Ingersoll Bowditch designated some other method of appointment or had

specified, for instance, a will invalid under the laws of California, nevertheless the interest would have been transferred. In that situation it could not rightly be said that the transfer of interest was dependent upon the laws of the state of California.

In short, the distinction between the two cases rests upon the fundamental reasons for the imposition of an inheritance tax, a resort to the sovereignty of the state for a transfer of an interest. In the Bowditch case no such resort was had and no tax could be imposed. In the instant case resort to the sovereignty of the state is necessary and a tax is, therefore, proper and permissible.

Judgment reversed.

Richards, J., Seawell, J., Lawlor, J., Waste, J., Shenk, J., and Myers, C. J., concurred.