## TREICHLER, EXECUTOR, *v.* WISCONSIN.

No. 20.   Argued October 11–12, 1949.—Decided November 7, 1949.

*Alexander W. Schutz* argued the cause and filed a brief for appellant.

*Harold H. Persons,* Assistant Attorney General of Wisconsin, argued the cause for appellee.   With him on the

brief were *Thomas E. Fairchild,* Attorney General, and *Neil Conway.*

*J. Gilbert Hardgrove* filed a brief, as *amicus curiae,* supporting appellant.

MR. JUSTICE CLARK delivered the opinion of the Court.

This is an appeal from a decision of the Supreme Court of Wisconsin, arising from an order of the County Court of Milwaukee County, levying certain death taxes on the estate of Fred A. Miller, deceased, under the applicable statutes of Wisconsin. The question for decision is the validity of the Wisconsin emergency tax on inheritances, Wis. Stat. (1947) § 72.74 (2), when tested in the light of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

The decedent died testate on December 19, 1943, a resident of Wisconsin. At death his gross estate was $7,849,714.84. Property located in Wisconsin was valued at $6,869,778.61; the remainder of $979,936.23 consisted of real and tangible personal property situated in the States of Illinois and Florida.[1]

The Commissioner of Internal Revenue assessed net federal taxes against the estate in the sum of $3,076,131.19, inclusive of the 80% of the basic federal tax subject to credit for state estate taxes as provided by § 301 (b) of the United States Revenue Act of 1926, 44 Stat. 70, as amended, 26 U. S. C. § 813 (b). This 80% credit was the sum of $630,709.62.

---

[1] The record does not reveal the exact nature of the property, and we have held that whether the property is "tangible" within the meaning of *Frick* v. *Pennsylvania,* 268 U. S. 473 (1925), *infra,* is a federal question. *Blodgett* v. *Silberman,* 277 U. S. 1 (1928). In this case, however, the parties and the court below agree that the property is clearly "tangible" within the *Frick* rule. We accept that assumption.

Wisconsin has a triad of death taxes known as (1) normal inheritance tax, (2) estate tax, and (3) emergency tax.

The normal Wisconsin inheritance tax, as levied by Wis. Stat. (1947) §§ 72.01 to 72.24, was in this case $220,682.12. It is levied only on property within the State of Wisconsin and is not in controversy here.

To take advantage of the credit provisions of the Revenue Act of 1926, the Wisconsin legislature also enacted an estate tax in the amount of 80% of the basic federal tax subject to credit, less "the aggregate amount of all estates, inheritance, transfer, legacy and succession taxes paid to any state or territory or the District of Columbia, in respect to any property in the estate of said decedent." Wis. Stat. (1947) § 72.50. Wisconsin normal inheritance taxes as well as out-of-state taxes are deducted from the federal credit. The estate tax on this estate was computed at $352,701.79. However, this provision of the Wisconsin statutes is not under explicit attack here.

The only statute, the validity of which is involved in this appeal, is § 72.74 (2) of the Wisconsin statutes known as the Emergency Tax on Inheritances. The section under scrutiny provides:

"In addition to the taxes imposed by sections 72.01 to 72.24 and 72.50 to 72.61, an emergency tax for relief purposes, rehabilitation of returning veterans of World War II, construction and improvements at state institutions and other state property and for post-war public works projects to relieve post-war unemployment is hereby imposed upon all transfers of property which are taxable under the provisions of said sections and which are made subsequent to March 27, 1935 and prior to July 1, 1949 which said tax shall be equal to 30 per cent of the tax imposed by said sections."

As is apparent, computation of the additional emergency tax involves only four factors: (1) the amount of the 80% federal credit, (2) the taxes paid to other jurisdictions, (3) Wisconsin normal inheritance taxes, and (4) the 30% rate imposed. In applying the yardstick of this section to the decedent's estate, the Wisconsin authorities took the *total* of the 80% federal credit, that is $630,709.62, and first deducted from it the *taxes* paid to states other than Wisconsin—Illinois ($35,616.26) and Florida ($21,709.45)—and Wisconsin's normal inheritance tax ($220,682.12), which left $352,701.79. The tax due was then calculated by taking 30% of the latter amount, plus 30% of the normal inheritance tax. The result, $172,015.20, was levied as the emergency inheritance tax due.

It will be seen that as the taxing formula is reduced, the normal inheritance tax is no longer a factor in the computation. For while 30% thereof is added to 30% of the estate tax to give the emergency tax, the normal inheritance tax has already been subtracted in the computation of the basic estate tax. Hence, in extending the formula of the emergency tax, the inheritance taxes cancel.[2] What is left, other than out-of-state taxes, is simply 80% of the basic federal tax, rated and measured by the entire estate, regardless of situs, and therefore including the property located in Illinois and Florida.

The court below thought that the presence of 87.52% of Mr. Miller's property within Wisconsin justified its statement that the state taxed only Wisconsin property. And the state argues that the "other 20%" over the federal basic estate tax 80% credit "more than absorbs, or is, on any mathematical basis, attributable to" the 12.48% of property outside Wisconsin. But Wisconsin made but

---

[2] The formula is as follows:

30% × Wisconsin normal inheritance tax + 30% (80% federal basic tax − Wisconsin normal inheritance tax − taxes paid in Illinois and

80% of the federal tax its own; and as it did not apportion that 80% to property within the state, the presence of property therein is simply a fortuity which cannot help the taxing jurisdiction. See *Owensboro National Bank* v. *Owensboro,* 173 U. S. 664, 683 (1899). The same must be said of deductions for out-of-state taxes, which have no necessary relation to the proportion of property outside Wisconsin.[3]

---

Florida). This reduces to: 30% (80% federal basic tax—taxes paid in Illinois and Florida).

Deductions authorized in the computation of the normal inheritance tax are thus of no significance.

The State's table of computation reads:

(1) Wisconsin Normal Inheritance Taxes............ $220,682.12
(2) Wisconsin Estate Tax:—
    80% of U. S. Estate Tax............ $630,709.62
    Less:—
    (a) Wisconsin Normal
        Taxes (1) above.. $220,682.12
    (b) Illinois Inheritance
        Taxes ........... 35,616.26
    (c) Florida Inheritance
        Taxes ........... 21,709.45
    Total State Taxes................ 278,007.83

    Difference is Wisconsin Estate Tax.............. 352,701.79
(3) Wisconsin Emergency Tax:—
    Wisconsin Normal
        Taxes (1) above.. $220,682.12
    Wisconsin Estate Tax
        (2) above ........ 352,701.79

        Total ............. $573,383.91
        Emergency Tax is 30%..................... 172,015.20

Total Wisconsin Inheritance Taxes................. $745,399.11

[3] A different question might be presented, however, if the statute in question authorized computation to begin with 87.52% rather than all of the 80% federal credit. We intend to intimate no opinion as to that situation.

We think it clear that the order entered by the Supreme Court of Wisconsin authorized a tax on property rated and measured in part by tangible property, the situs of which was outside Wisconsin.

This Wisconsin may not do. In *Frick* v. *Pennsylvania,* 268 U. S. 473 (1925), Pennsylvania levied an inheritance tax based upon real and personal property wherever located. Mr. Frick's art collection was located in New York. In a unanimous opinion this Court ruled that Pennsylvania's statute, "in so far as it attempts to tax the transfer of tangible personalty having an actual situs in other States, contravenes the due process of law clause of the Fourteenth Amendment and is invalid." Wisconsin's statute may be more sophisticated than Pennsylvania's, but in terms of ultimate consequences this case and the *Frick* case are one. It is quite unnecessary to know in either case what property is located within the taxing jurisdiction in order to compute the challenged exaction.

Nor are we inclined to discard the *Frick* rule. We have consistently upheld the domicile's levy when it was based upon intangible property with technical title without the jurisdiction. *Blodgett* v. *Silberman,* 277 U. S. 1 (1928). And the economic effects of tax burdens in the federal system cannot control our results, limited as we are to the words of the Fourteenth Amendment. *State Tax Commission of Utah* v. *Aldrich,* 316 U. S. 174, 181 (1942), citing Holmes, J., dissenting in *Baldwin* v. *Missouri,* 281 U. S. 586, 595 (1930). But when a state reaches beyond its borders and fastens upon tangible property, it confers nothing in return for its exaction. Since the state of location has all but complete dominion over the physical objects sought to be measured for tax, see *Green* v. *Van Buskirk,* 7 Wall. 139, 150 (1869); *Curry* v. *McCanless,* 307 U. S. 357, 363 (1939), and cases cited, no other state can offer a *quid pro quo.* A state is not equipped with

the implements of power and diplomacy without its boundaries which are at the root of the Federal Government's undoubted right to measure its tax upon foreign property. *United States* v. *Bennett,* 232 U. S. 299 (1914); see *Burnet* v. *Brooks,* 288 U. S. 378 (1933). And if the state has afforded nothing for which it can ask return, its taxing statute offends against that due process of law it is our duty to enforce.[4]

We hold that Wisconsin's emergency inheritance tax is invalid insofar as it is measured by tangible property outside Wisconsin. The judgment must be reversed and the cause remanded for proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE BLACK dissents. He agrees that the Court's holding logically follows from its interpretation of the due process clause in the *Frick* case, but believes that so interpreted the clause gives a more expansive control over state tax legislation than the due process clause justifies.

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

---

[4] Of course we have refused to be governed by this consideration when so to do would have placed a premium upon the avoidance of all state taxes. *New York ex rel. New York C. & H. R. R. Co.* v. *Miller,* 202 U. S. 584, 597 (1906); *Southern Pacific Co.* v. *Kentucky,* 222 U. S. 63 (1911); cf. *Northwest Airlines* v. *Minnesota,* 322 U. S. 292 (1944). See *Commonwealth* v. *Pennsylvania Coal Co.,* 197 Pa. 551, 47 A. 740 (1901); *Norfolk & W. R. Co.* v. *Board,* 97 Va. 23, 32 S. E. 779 (1899).