[L. A. No. 20827.   In Bank.   Sept. 7, 1950.]

Estate of ARTHUR B. NEWTON, Deceased.   THOMAS H.
KUCHEL, as State Controller, etc., Appellant, v. BEV-
ERLY M. NEWTON, Respondent.

James W. Hickey, Chief Inheritance Tax Attorney, Morton
L. Barker, Senior Inheritance Tax Attorney, and Vincent J.
McMahon, Assistant Inheritance Tax Attorney, for Appellant.

Leon W. Delbridge, Brady & Nossaman and Walter L.
Nossaman for Respondent.

McCutchen, Thomas, Matthew, Griffiths & Greene as Amici
Curiae on behalf of Respondent.

SHENK, J.—The State Controller has appealed from an
order sustaining objections to the report of the inheritance tax
appraiser and fixing inheritance tax in the sum of $14.08,
which was less by $31,105.19 than the amount fixed in the
report.

The facts are not in dispute.   A testamentary trust was

created in the State of New York by Charles E. Newton, the decedent's father, who died a resident of that state on October 19, 1921. The trust provided for an income to the decedent during his life. Further provisions gave him the power by will to appoint his wife to take on his death a specified proportion of the trust assets. The decedent executed a will in New York on May 2d, 1930, whereby he appointed his wife as the beneficiary. Later he and his wife removed to California where as a resident he died on March 11, 1943, leaving his widow, the respondent herein. His will was admitted to probate.

The assets of the trust subject to the appointment consist entirely of intangibles valued at $412,510.36 held in trust by New York trustees. There are no shares of California corporations. The widow objected to the Controller's report on the ground that under the decision in *Estate of Bowditch*, 189 Cal. 377 [208 P. 282, 23 A.L.R. 735], the state was without jurisdiction to impose the portion of the tax measured by the appraised value of the intangibles held in New York.

There is no merit in the contention that the exercise of the power of appointment occurred at the time the decedent made his will in New York. Since a will takes effect as of the time of the death of the testator there can be no question that the death of the decedent determined the time of the exercise of the power. (*Nichols* v. *Emery*, 109 Cal. 323, 329 [41 P. 1089, 50 Am.St.Rep. 43].)

Prior to 1922 the history regarding the taxation in this state of transfers of property through the gift or exercise of powers of appointment was substantially the following:

The Inheritance Tax Act of 1905 (Stats. 1905, p. 341, § 1), made taxable the exercise of powers of appointment as a transfer of property by will from the donee of the power. (Provisions regarding nonexercise of the power will not be noted.) The Inheritance Tax Act of 1913 (Stats. 1913, p. 1066) repealed that provision with a saving clause, and in section 3 provided that the gift of a power of appointment was a taxable transfer of property from the donor to the donee upon the death of the donor. In 1917 (Stats. 1917, p. 880) the 1913 enactment was repealed with a saving clause and the Legislature reverted to the 1905 provision, again making taxable the transfer by the exercise of the power (§ 2(6)), and it remained so until 1935. In the 1917 act (§ 1(2)) the words "estate" and "property" included all personal property of resident decedents within or without the state.

In August 1922 this court decided *Estate of Bowditch, supra* (189 Cal. 377). The resident decedent, Charlotte Bowditch, was the donee of a power to appoint and did appoint by will the beneficiary of a trust created under the will of her father, a Massachusetts domiciliary. The trust assets amounting in value to some $299,000 consisted entirely of personal property, the nature of which was not disclosed in the opinion, located in Massachusetts. The facts were in essence parallel to those of the present case and the appeal brought to this court the question whether the state had jurisdiction to include the transfer by the decedent's exercise of the power of appointment as a taxable transfer. The court recognized that a succession to property effected independently of the authority of a particular state was not taxable by that state and was not within the purview of its inheritance tax acts. In applying the test it was observed that the state had plenary power over the administration and disposition of estates of persons domiciled here including personal property wherever situated, and that jurisdiction to exercise the taxing power attached when there was actual or constructive situs of the property within the state. The court concluded, however, that under the facts the state could not tax the transfer effected through the exercise of the power by the decedent. The court relied on *United States* v. *Field,* 255 U.S. 257 [41 S.Ct. 256, 65 L.Ed. 617], *Walker* v. *Treasurer & Receiver General,* 221 Mass. 600 [109 N.E. 647], and *Shattuck* v. *Burrage,* 229 Mass. 448 [118 N.E. 889], in making the following statement: "But personal property which is the subject of a power of appointment does not acquire a constructive *situs* in the state of the domicile of the donee of the said power under this theory [i.e. that personal estate wherever situated is deemed to have the situs of the domicile of the owner], for such property *is no part of the estate of the donee.* 'When a donor gives to another power of appointment over property, the donee of the power does not thereby become the owner of the property. The donee has no title whatever to the property. The power is simply a delegation to the donee of authority to act for the donor in the disposition of the latter's property' . . . Therefore, for the purpose of testamentary succession and distribution, the property here involved has acquired no *situs* in this state, either actual or constructive, and the laws of Massachusetts alone control the transfer thereof under the will of Charlotte Bowditch." Thus the theory was that since the interest of the transferee was derived from the will of the Massachusetts

donor, there was no resort to the sovereignty of this state for the transfer of the property interest through the decedent's exercise of the power of appointment. (See *Estate of Dillingham*, 196 Cal. 525, 533-534 [238 P. 367].)

In 1923 (Stats. 1923, p. 693, § 1(2)) the following italicized words were added in the definition of "estate" and "property" to include "all personal property within or without the state *or subject to the jurisdiction thereof*."

Between that year and the next statutory change the United States Supreme Court decided *Wachovia Bank & Trust Co.* v. *Doughton* (1926), 272 U.S. 567 [47 S.Ct. 202, 71 L.Ed. 413]. The facts were somewhat similar to those in the Bowditch case. The donor died in Massachusetts leaving a will probated there. A trust created thereby, located and administered in Massachusetts, gave to the donor's daughter the power to appoint the beneficiary of trust assets consisting of intangibles valued at nearly $400,000. The donee appointed beneficiaries by will and died a resident of North Carolina. The question of the jurisdiction of North Carolina to tax the exercise of the power under a statute designating the exercise thereof as a transfer taxable in the same manner as though the property belonged absolutely to the donee was presented to the Supreme Court. The court noted the principles of the cases above cited, among others, as those commonly accepted as controlling the question of the constructive situs of the intangibles in the taxing state and concluded that no right exercised by the donee was conferred by North Carolina; therefore that North Carolina did not have jurisdiction to impose the tax. Mr. Justice Holmes stated his dissenting view that the result was irreconcilable with *Bullen* v. *Wisconsin*, 240 U.S. 625 [36 S.Ct. 473, 60 L.Ed. 830], where the general power was considered to have the same effect as ownership.

In 1935 (Stats. 1935, p. 1266) the Legislature amended section 2(6) to make the gift of the power a taxable transfer as in the 1913 statute. As amended the section read: "Whenever any person or corporation shall be given a power of appointment by virtue of any disposition of property made before or after the passage of this act, such gift of power of appointment shall, under the provisions of this act, be deemed a taxable transfer made from the donor of said power to the donee thereof at the date of the donor's death; provided that where the donor of a power of appointment dies prior to the

taking effect of this amendment and the power is exercised thereafter the exercise of said power of appointment shall be deemed a transfer taxable as provided in subdivision 6 of section 2 of the Inheritance Tax Act of 1921 as amended in 1929." At the same time the definition of "estate" and "property" (§ 1(2)) was amended to include "all intangible personal property of resident decedents within or without the State or subject to the jurisdiction thereof."

The foregoing provisions of section 2(6), with the addition of the words "general or limited" preceding the words "power of appointment," were in effect retained by the amendment of 1941 (Stats. 1941, p. 1222, now embodied in Rev. & Tax. Code, §§ 13692 and 13693). The 1935 act as amended in 1941 was the statute in force at the time of the decedent's death in 1943. The result was to impose the tax on a transfer by the gift of the power of appointment made by a resident donor, except that the imposition of the tax on a transfer through the exercise of the power by a resident donee was saved where the donor had died prior to the effective date of the 1935 amendment. The death of the donor, decedent's father, prior to the effective date of the 1935 statute calls for the application of the saving clause to the decedent's exercise of the power. There is no question of the correctness of the inheritance tax appraiser's computation of the tax if the statute applies to impose it.

In 1938 the Supreme Court decided *Curry* v. *McCanless*, 307 U.S. 357 [59 S.Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162], and *Graves* v. *Elliott*, 307 U.S. 383 [59 S.Ct. 913, 83 L.Ed. 1356]. In the McCanless case the question was whether Tennessee as well as Alabama might constitutionally impose death taxes upon the transfer of an interest in intangibles held in trust in Alabama but passing by testamentary appointment under a donated power exercised by a decedent domiciled in Tennessee. The decedent was both the donor and the donee of the power. By statute Tennessee imposed a tax on transfers of resident decedents' intangible property wherever located including transfers under powers of appointment. The Supreme Court noted the nature of intangibles, the practical difficulties in applying to them a physical situs, and the sovereign power which extends over intangibles of a domiciled decedent although they have no physical location within the state exercising the power. It was declared that a jurisdiction which does not depend on physical presence within the state is not lost by declaring that it is absent. It was held that the power to

tax the intangibles was not lost because the court might choose to say that they were located elsewhere; that the decedent's power to dispose of intangibles was a potential source of wealth and therefore property in his hands; and that there was no substantial difference between that and any other case in which at the moment of death the evidences of intangibles passing under the will of a decedent domiciled in one state were physically present in another. The conclusion followed that the transfer was taxable under the Tennessee statute. The Elliott case determined that New York might constitutionally tax a domiciliary's relinquishment at death of a power to revoke a trust of intangibles held by a Colorado trustee. Following the McCanless decision it was held that the right to revoke the trust had the attributes of property and was a potential source of wealth; that the legal interest in the intangibles held in trust in Colorado was not so dissociated from the person of the decedent as to be beyond the taxing power of the state of domicile any more than the decedent's other rights in intangibles. The court said that, as in the case of any other intangibles, control over the person and estate of the decedent at the place of domicile and the duty of decedent to contribute to the support of government there, afforded adequate constitutional bases for the imposition of a tax measured by the value of the intangibles transmitted or relinquished at death. The fact that the power was donated by another was held to be without significance. Reliance was in part on *Bullen* v. *Wisconsin,* 240 U.S. 625 [36 S.Ct. 473, 60 L.Ed. 830], invoked as support for the dissenting view in the Wachovia case. (See also *Orr* v. *Gilman* (1901), 183 U.S. 278 [22 S.Ct. 213, 46 L.Ed. 196]; *Blackstone* v. *Miller,* 188 U.S. 189 [23 S.Ct. 277, 47 L.Ed 439]; *Chanler* v. *Kelsey,* 205 U.S. 466 [27 S.Ct. 550, 51 L.Ed. 882]. *Cf. Brooke* v. *City of Norfolk,* 277 U.S. 27 [48 S.Ct. 422, 72 L.Ed. 767]; *Safe Deposit & T. Co.* v. *Virginia,* 280 U.S. 83 [50 S.Ct. 59, 74 L.Ed. 180].)

The foregoing declarations disclosed the fundamental error in arriving at a contrary conclusion in the Wachovia and Bowditch cases by the failure to ascribe the recognized proprietary attributes to similar acts. Consequently in *Graves* v. *Schmidlapp* (1942), 315 U.S. 657 [62 S.Ct. 870, 86 L.Ed. 1097, 141 A.L.R. 948] the Supreme Court overruled the Wachovia case in applying the Bullen, McCanless and Elliott decisions to sustain the constitutional power of New York to tax the

transfer effected by a resident decedent's exercise of a power of appointment created by the will of a nonresident donor in respect to intangibles held in trust in Massachusetts. In reversing the New York Court of Appeals' affirmance of the Surrogate's decree which reduced the assessed estate tax on the authority of the Wachovia case, the Supreme Court said: "The conclusion there reached and the reasons advanced in its support cannot be reconciled with the decision and the reasoning of the Bullen, the McCanless and the Elliott cases. It is plain that if appropriate emphasis be placed on the orderly administration of justice rather than blind adherence to conflicting precedents, the Wachovia case must be overruled. There is no reason why the state should continue to be deprived of revenue from a subject which from the beginning has been within the reach of its taxing power; a subject over which we cannot say the state's control has been curtailed by the due process clause of the Fourteenth Amendment. No interest which could be served by so rigid an adherence to stare decisis is superior to the demands of a system of justice based on a considered and a consistent application of the Constitution."

Points of similarity or difference in the various cases are immaterial because they also are of no significance here. There can now be no question of the power of California to impose the tax in question; and conflicting declarations which led to a contrary result in the Bowditch case are overruled. The statute clearly provides that the exercise of the power of appointment is deemed "a transfer taxable under the provisions of this act, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power, and had been bequeathed or derived by such donee by will." (Inheritance Tax Act of 1921, as amended in 1929, § 2(6), Stats. 1929, p. 1834.) The statutory provision as incorporated in the 1935 act is applicable here and supports the imposition of the tax reported by the inheritance tax appraiser.

The order is reversed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J.—I concur, but deem it advisable to spell out with particularity the reasons for my concurrence.

The Inheritance Tax Acts of this state plainly provide for

the imposition of the tax in the present case. Section 2 of the Inheritance Tax Act of 1935 as amended in 1941, by which this appeal is governed, provides:

"A tax shall be and is hereby imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise . . . said taxes to be upon the market value of such property at the date of death of the decedent and at the rates hereinafter prescribed . . .

"(6) *Powers of appointment.* Whenever any person or corporation shall be given a general or limited power of appointment by virtue of any disposition of property made before or after 5 p.m. of June 25, 1935, such gift of power of appointment shall, under the provisions of this act . . . be deemed a taxable transfer made from the donor of said power to the donee thereof at the date of the donor's death, except that:

"(a) Where the donor of a power of appointment died prior to 5 p.m. of June 25, 1935, and the power is exercised thereafter, the exercise of said power of appointment shall be deemed a transfer taxable as provided in Subdivision (6) of Section 2 of the Inheritance Tax Act of 1921, as amended in 1929." (3 Deering's Gen. Laws, Act 8495, § 2, pp. 3207-3208.)

Subdivision (6) of section 2 of the Inheritance Tax Act of 1921 as amended in 1929 provides:

"Whenever any person, trustee or corporation shall exercise a power of appointment derived from any disposition of property made either before or after the passage of this act, *such appointment, when made, shall be deemed a transfer taxable under the provisions of this act, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power,* and had been bequeathed or derived by such donee by will." (Stats. 1929, ch. 844, pp. 1836-1837. Italics added.)

Subdivision (2) of section 1 of the 1935 act provides that "'property' as used in this act . . . shall include all intangible personal property of resident decedents within or without the State or subject to the jurisdiction thereof." (3 Deering's Gen. Laws, Act 8495, § 1 (2), p. 3206.)

Decedent's father, the donor of the power, died in 1921. Decedent died domiciled in California on March 11, 1943, leaving a will executed in New York in 1930 appointing his

wife, respondent herein, beneficiary under his power of appointment of the trust assets. His will was probated in California. Since the donor of the power died before June 25, 1935, and the power was exercised after that date, the 1921 and 1935 acts clearly impose a tax on the transfer of the trust assets from decedent to his wife by virtue of decedent's exercise of the power of appointment since the appointment is "deemed a transfer taxable under the provisions of this act, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power, and had been bequeathed or derived by such donee by will."

Respondent contends, however, that, notwithstanding the express statutory provisions for the taxation of the transfer, the transfer is not taxable under the decision of this court in *Estate of Bowditch*, 189 Cal. 377 [208 P. 282, 23 A.L.R. 735]. In her view, the Bowditch case, unlike *Wachovia Bank & Trust Co.* v. *Doughton*, 272 U.S. 567, 575 [47 S.Ct. 202, 71 L.Ed. 413], did not decide that there is a constitutional impediment to the imposition of the tax. She views *Estate of Bowditch* as a decision that the California Inheritance Tax Acts do not apply to transfers of property by one who, under California property law, is not the owner of the property transferred. She asserts that since the Bowditch case decided only that the statute did not impose such a tax, it is unaffected by the decision of the United States Supreme Court in *Graves* v. *Schmidlapp*, 315 U.S. 657 [62 S.Ct. 870, 86 L.Ed. 1097, 141 A.L.R. 948], that the Fourteenth Amendment does not prohibit its imposition.

Respondent's contention finds no support in the language of the statute or in the decision of this court in *Estate of Bowditch*. The imposition of an inheritance or estate tax does not depend on the decedent's ownership of the property under common law principles. The tax is not imposed on the property, but on the decedent's transfer of that property. When, as in the present case, the statute expressly makes the transfer of property taxable "in the same manner as though the property . . . belonged absolutely" to the decedent, it is irrelevant that under common law concepts of property ownership the property did not belong absolutely to the decedent. The only question then is whether the imposition of such a tax is within the constitutional power of the state.

Since 1901 it has been recognized that the state may properly tax the transfer of property by the donee of the power to

his appointee under its plenary power to control succession to the estates of its domiciliaries. "Whatever may be the technical source of title of a grantee under a power of appointment it cannot be denied that, in reality and substance, it is the execution of the power that gives the grantee the property passing under it . . . When David Dows, Senior, devised this property to the appointee under the will of his son he necessarily subjected it to the charge that the State might impose on the privilege accorded to the son of making a will. That charge is the same in character as if it had been laid on the inheritance of the estate of the son himself, that is, for the privilege of succeeding to property under a will." (*Orr* v. *Gilman*, 183 U.S. 278, 282-283 [22 S.Ct. 213, 46 L.Ed. 196]; *Chanler* v. *Kelsey*, 205 U.S. 466, 474-475, 477 [27 S.Ct. 550, 51 L.Ed. 882].)

"Decedent's . . . power to dispose of the intangibles at death was property in his hands in New York, where he was domiciled. *Graves* v. *Elliott, supra.* He there made effective use of the power to bestow his bounty on the widow. Its exercise by will to make a gift was as much an enjoyment of a property right as would have been a like bequest to his widow from his own securities. See *Helvering* v. *Horst,* 311 U.S. 112, 117 [61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655]. . . . Taxation of such enjoyment of the power to dispose of property is as much within the constitutional power of the state of his domicile as is the taxation of the transfer at death of intangibles which he owns.

"Since it is the exercise of the power to dispose of the intangibles which is the taxable event, the mere fact that the power was acquired as a donation from another is without significance. We can perceive no ground for saying that its exercise by the donee is for that reason any the less the enjoyment of a property right, or any the less subject to taxation at his domicile. The source of the power by gift no more takes its exercise by the donee out of the taxing power than the like disposition of a chose in action or a share of stock, ownership of which is acquired by gift." (*Graves* v. *Schmidlapp,* 315 U.S. 657, 662-663 [62 S.Ct. 870, 86 L.Ed. 1097, 141 A.L.R. 948].)

*Graves* v. *Schmidlapp* did not alter any concepts of property ownership. The taxability of transfers of property by a donee's exercise of a power of appointment was established by the Orr and Chanler cases under statutes identical with

section 2 (6) of the 1921 act under which *Estate of Bowditch* was decided. (See also, *Bullen* v. *Wisconsin,* 240 U.S. 625 [36 S.Ct. 473, 60 L.Ed. 830].) Nor did *United States* v. *Field,* 255 U.S. 257 [41 S.Ct. 256, 65 L.Ed. 617], announce a different rule. In that case, the court was not concerned with a statute expressly taxing the transfer of property by the donee's exercise of a power of appointment such as those before it in the Orr and Chanler cases or that before the California Supreme Court in *Estate of Bowditch.* The Commissioner of Internal Revenue sought to include in the decedent's gross estate the value of property subject to the decedent's power of appointment derived from her husband's will, on the theory that the donee of a power of appointment was the owner of property subject thereto within the meaning of section 202 (a) of the Revenue Act of 1916.* He relied, not on a statutory provision taxing the transfer of property by the exercise of a power of appointment, but on the general provision including in a decedent's gross estate all property owned by the decedent at the time of his death. The court held that there was no question "as to the power of Congress to impose a tax upon the passing of property under testamentary execution of a power of appointment," regarding that question as settled by *Chanler* v. *Kelsey.* It held that the only question was whether Congress had done so. The exercise of the power, in the absence of specific statutory provision therefor, did not of itself require the inclusion of the appointed property in the gross estate of the donee, and the court held that since Congress had not expressly authorized the inclusion of the appointed property in the decedent's gross estate the tax could not be sustained. (*United States* v. *Field,* 255 U.S. 257, 263 [41 S.Ct. 256, 65 L.Ed. 617].) Since the decision in the Field case, and without any change in concepts of property ownership, Congress has enacted legislation including in the donee's gross estate property subject to his power of appointment as if he were the absolute owner thereof. (Internal Revenue Code § 811 [f].) There has been no change in the concept of property ownership enunciated by the Field case; that decision is still applicable to powers of appointment exercised before the enactment of section 811 (f). *Helvering* v. *Safe Deposit & Trust Co.,* 316 U.S. 56, 63 [62 S.Ct. 925, 86 L.Ed. 1266, 139 A.L.R. 1513].)

---

*Now section 811(a) of the Internal Revenue Code, requiring the inclusion in the decedent's gross estate of all property "to the extent of the interest therein of the decedent at the time of his death."

Congress did, however, under the same concepts of property ownership underlying the Field decision, enact a statute by which property transferred by the exercise or nonexercise of a power of appointment is deemed transferred by the donee of the power and included in his gross estate. (*Helvering* v. *Safe Deposit & Trust Co.,* 316 U.S. 56, 65 [62 S.Ct. 925, 86 L.Ed. 1266, 139 A.L.R. 1513].)

The basis of the decision in the Bowditch case is not that the transfer of property by appointment may not be taxed as a transfer by will from the donee, but that California did not have the constitutional power to tax the transfer if the evidences of ownership of the intangible personal property transferred were located outside the state. The court expressly held that the plenary power of the state to tax succession to property could not be asserted in that case for the reason that "both the physical and constructive *situs* of the [appointed] property" was outside the state. Since the legal title was held by nonresident trustees and the evidences of ownership of the intangibles transferred in that case were located outside the state, the court held that California did not have jurisdiction to tax the transfer of that property by the will of a resident decedent. The tax could be sustained "only in the event that the personal property which is the . subject of the said power is within the jurisdiction of the state." (*Estate of Bowditch,* 189 Cal. 377, 380 [208 P. 282, 23 A.L.R. 735].) The court's determination of California's "jurisdiction to impose an inheritance tax" was cited with approval in the 1926 decision of the United States Supreme Court holding that the imposition of a similar tax under an identical statute was beyond the constitutional power of the State of North Carolina. (*Wachovia Bank & Trust Co.* v. *Doughton,* 272 U.S. 567, 575 [47 S.Ct. 202, 71 L.Ed. 413].)

The error of the decisions in the Bowditch and Wachovia Bank & Trust cases arose out of the reasoning that intangible personal property must have a situs or physical location. Although the situs of realty or tangible personal property controls the jurisdiction of a state to tax the transfer thereof (*Frick* v. *Pennsylvania,* 268 U.S. 473, 489 [45 S.Ct. 603, 69 L.Ed. 1058]; *Treichler* v. *State of Wisconsin,* 338 U.S. 251 [70 S.Ct. 1, 3-4, 94 L.Ed. ——]), "very different considerations, both theoretical and practical, apply to the taxation of intangibles, that is, rights which are not related to physical things. Such rights are but relationships between persons,

natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts. The power of government over them and the protection which it gives them cannot be exerted through control of a physical thing. They can be made effective only through control over and protection afforded to those persons whose relationships are the origin of the rights. See *Chicago, R. I. & P. Ry. Co.* v. *Sturm,* 174 U.S. 710, 716 [19 S.Ct. 797, 43 L.Ed. 1144] ; *Harris* v. *Balk,* 198 U.S. 215, 222 [25 S.Ct. 625, 49 L.Ed. 1023]. Obviously, as sources of actual and potential wealth—which is an appropriate measure of any tax imposed on ownership or its exercise—they cannot be dissociated from the persons from whose relationships they are derived. They are not in any sense fictions. They are indisputable realities.

"The power to tax 'is an incident of sovereignty, and is co-extensive with that to which it is an incident. All subjects over which the sovereign power of a state extends, are objects of taxation; but those over which it does not extend, are, upon the soundest principles, exempt from taxation.' *McCulloch* v. *Maryland,* 4 Wheat. (U.S.) 316, 429 [4 L.Ed. 579]. But this does not mean that the sovereign power of the state does not extend over intangibles of a domiciled resident because they have no physical location within its territory, or that its power to tax is lost because we may choose to say they are located elsewhere. A jurisdiction which does not depend on physical presence within the state is not lost by declaring that it is absent. From the beginning of our constitutional system control over the person at the place of his domicile and his duty there, common to all citizens, to contribute to the support of government have been deemed to afford an adequate constitutional basis for imposing on him a tax on the use and enjoyment of rights in intangibles measured by their value. Until this moment that jurisdiction has not been thought to depend on any factor other than the domicile of the owner within the taxing state, or to compel the attribution to intangibles of a physical presence within its territory, as though they were chattels, in order to support the tax." (*Curry* v. *McCanless,* 307 U.S. 357, 365-367 [59 S.Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162] ; *Graves* v. *Elliott,* 307 U.S. 383, 386 [59 S.Ct. 913, 83 L.Ed. 1356].)

It follows, therefore, that since California did have the power to tax the transfer of the appointed property by the donee and plainly provided for such a tax, and since its jurisdiction to impose the tax did not depend upon "the

attribution to intangibles of a physical presence within its territory,'' the fact that the legal title to the intangibles was held by nonresident trustees and the evidences of ownership of the securities subject to Charlotte Bowditch's power of appointment were physically located outside the state should not have deprived California of jurisdiction to tax their transfer. In the light of its decision in *Curry* v. *McCanless,* the United States Supreme Court in *Graves* v. *Schmidlapp,* 315 U.S. 657, 662-663, 665 [62 S.Ct. 870, 86 L.Ed. 1097, 141 A.L.R. 948], overruled its earlier decision in the Wachovia Bank & Trust Co. case and held that the state's jurisdiction to tax the transfer of the appointed property was not lost because the ''intangibles . . . have no physical location within its territory,'' so long as the donee of the power was domiciled in the taxing state. The court held that there was no question that the statute there under consideration, essentially identical with section 2(6) of the 1921 act, taxed the transfer as one from the donee of the power of appointment,* or that New York had the constitutional power to enact such a statute. (*Chanler* v. *Kelsey,* 205 U.S. 466, 477 [27 S.Ct. 550, 51 L.Ed. 882].) Since the transfer by the donee of the power was the taxable event, the residence of the donor was immaterial. ''The mere fact that the power was acquired as a donation from another is without significance.'' (315 U.S. at 663.) Since the jurisdiction to tax intangibles is not dependent on physical presence within the state (*Curry* v. *McCanless, supra*), it was held that neither the residence of the trustees nor the location of the evidences of ownership of the appointed intangibles affected the jurisdiction of the taxing state. (315 U.S. at 664-665.) For these reasons, the New York statute, admittedly valid as to property located within the state, was held valid as to resident donees irrespective of the ''physical and constructive *situs*'' of the property. With the decision of the United States Supreme Court in *Graves* v. *Schmidlapp,* the decision of this court in *Estate of Bowditch* that California did not have the constitutional power to tax the transfer therein has been as conclusively repudiated as the similar decision of the New York Court of Appeals (*State Tax Com.* v. *Schmidlapp,* 286 N.Y. 596 [35 N.E.2d 937]), which was

---

*''We are here concerned with a tax on the transfer of property from a decedent who by virtue of her power of appointment is, by the express language of the statute [the same as section 2(6)], deemed the absolute owner of the property to which her power of appointment relates.'' (*Estate of Rohnert,* 244 Wis. 404, 409 [12 N.W.2d 684].)

reversed in *Graves* v. *Schmidlapp*. The question therefore is not, as respondent asserts, whether *Estate of Bowditch* as a decision on statutory construction should be overruled, but whether *Estate of Bowditch* as a decision on California's constitutional power to tax contrary to the latest decision of the United States Supreme Court *must* be overruled. As a decision predicated on the due process clause of the United States Constitution, *Estate of Bowditch* cannot survive *Curry* v. *McCanless* and *Graves* v. *Schmidlapp*.

Respondent, however, contends that "even if *Estate of Bowditch* has been overruled by a 1942 decision [*Graves* v. *Schmidlapp*] as to any constitutional question involved, the 1935 act and the 1941 amendments were made in view of and adopted the rule of that case." It is her view that the reenactment of section 2(6) of the 1921 act after *Estate of Bowditch* without change therein was "obviously motivated by a desire to conform the statute to the Court's decision," for, had the Legislature disapproved the decision therein, it would have expressly repudiated it. It is in effect contended that the perpetuation of an erroneous interpretation of the United States Constitution may be achieved by legislative failure to defy the decisions of this court and of the Supreme Court of the United States announcing that interpretation.

Section 2 (6) of the 1921 act insofar as it governs the present case was not amended in 1935; it was incorporated into the 1935 act just as it read at the time the Bowditch case was decided. The shifting of the tax from the exercise of the power by the donee to the creation of the power by the donor was expressly made applicable only to powers created by donors dying after June 25, 1935, the effective date of the amendment; as to powers created by donors dying before that date but exercised thereafter, the exercise of the power remained "a transfer taxable under the provisions of this act, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power." The express language of the statute negatives any inference that the Legislature repealed the provision taxing the transfer by the exercise of the power because of the construction and application it was given by *Estate of Bowditch*. How, in the face of the fact that the Legislature incorporated the earlier statute verbatim into the 1935 act, can it be said that it repealed the provision? The Legislature could not more clearly demonstrate an intention to stand by the method of taxing such transfers so far as it constitutionally could do so. That in-

tention is also demonstrated by the 1923 amendment of section 2 (1) of the 1921 act (Stats. 1923, ch. 337, p. 694), providing for the taxation of all transfers at death of intangible personal property of resident decedents "within or without the State *or subject to the jurisdiction thereof.*" (Italicized words added by the 1923 amendment.) By that amendment the Legislature clearly expressed an intention to tax all transfers at death to the full extent of California's jurisdiction to tax. No other construction of legislative intention can be maintained consistently with this amendment.

Whatever merit there may be in the theory that the reenactment of a statute without change adopts the judicial construction thereof (*cf. Girouard* v. *United States,* 328 U.S. 61, 69 [66 S.Ct. 826, 90 L.Ed. 1084]; *Cleveland* v. *United States,* 329 U.S. 14, 22-23 [67 S.Ct. 13, 91 L.Ed. 12]; *Helvering* v. *Hallock,* 309 U.S. 106, 119 [60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368]), it is limited to cases in which the preceding decision has purported to interpret the statute. It has no application when the decision was that enforcement of the statute was beyond the state's constitutional power. *Estate of Bowditch* did not interpret section 2 (6) of the 1921 act; it decided that, as properly interpreted, the statute prescribed a tax that was beyond California's jurisdiction to impose. The decision therein was so interpreted by a later decision of this court (*Estate of Dillingham,* 196 Cal. 525, 534 [238 P. 367]), and was cited by the United States Supreme Court as authority for its decision that a similar application of an identical statute by North Carolina was beyond its constitutional power. (*Wachovia Bank & Trust Co.* v. *Doughton,* 272 U.S. 567, 575 [47 S.Ct. 202, 71 L.Ed. 413]; see also, *Wachovia Bank & Trust Co.* v. *Doughton,* 189 N.C. 50, 55 [126 S.E. 176]; Trowbridge, *Recent Inheritance Tax and Estate Tax Decisions,* 14 Cal.L. Rev. 1, 8; Nossaman, *State Taxation of Intangibles,* 18 Cal. L.Rev. 345, 369.) It would be an anomalous doctrine that legislative reenactment of a statute held partially unconstitutional adopts the decision on the issue of constitutionality as part of the statute. This court is not estopped to correct its own error merely because the Legislature has not chosen to defy the court's interpretation of the United States Constitution.

For the same reasons, it cannot be inferred from the Controller's failure to reassert the provisions of section 2 (6) in cases such as *Estate of Bowditch* that his inaction constitutes an administrative interpretation of the statute the same as that

now urged by respondent. The Controller's failure after *Estate of Bowditch* to attempt to tax such transfers did not demonstrate an interpretation of the statute, but only the recognition that under Bowditch and Wachovia the application of the statute according to the plain meaning of its provisions would be unconstitutional. The Controller can no more be required to defy the decisions of this court and the United States Supreme Court on the constitutionality of a statute than can the state Legislature. The Controller did not unduly delay in asserting the jurisdiction that the United States Supreme Court in 1942 asserted that he has; this proceeding was begun in 1943. It cannot reasonably be said that this is a case in which administrative or legislative inaction demonstrates an intention to accept an interpretation of the statute at variance with its plain meaning and the interpretation given identical statutes by the United States Supreme Court and the courts of other states. (*Graves* v. *Schmidlapp*, 315 U.S. 657, 662-663 [62 S.Ct. 870, 86 L.Ed. 1097, 141 A.L.R. 948] ; *Wachovia Bank & Trust Co.* v. *Doughton*, 189 N.C. 50, 53 [126 S.E. 176] ; *Pitman* v. *Pitman*, 314 Mass. 465, 469 [50 N.E.2d 69] ; *National Shawmut Bank* v. *Joy*, 315 Mass. 457, 472 [53 N.E.2d 113] ; *Pennsylvania Co.* v. *Kelly*, 134 N.J.Eq. 120, 133 [34 A.2d 538] ; *Estate of Rohnert*, 244 Wis. 404, 409 [12 N.W.2d 684].)

Amici curiae on behalf of respondent contend that if section 2 (6) of the 1935 act is construed to apply to the transfer in the present case, the statute violates the equal protection clause of the Fourteenth Amendment in that it arbitrarily discriminates between resident donees exercising powers of appointment created by donors dying before June 25, 1935, and resident donees exercising powers created by donors dying after that date. It is contended that, since the taxability of the exercise of the power by the donee depends upon the date of death of the donor, the statute is invalid for the reasons stated in *Binney* v. *Long*, 299 U.S. 280 [57 S.Ct. 206, 81 L.Ed. 239].

*Binney* v. *Long* involved a 1909 Massachusetts statute under which the transfer of property by the exercise or non-exercise of a power of appointment created by a donor dying before 1907 was taxed, but no tax was imposed if the power was created after 1907. A divided court, Justices Cardozo and Brandeis dissenting, held that the statute was invalid in that it arbitrarily selected a past date and discriminated between powers of appointment created before that date and those

created thereafter. It is clear that the invalidity of the statute was not predicated upon the selection of a date upon which the taxability or nontaxability of the transfer depended, but upon the fact that the selection of the date bore no reasonable relation to any legitimate legislative purpose. "Upon its face the statute arbitrarily selects a past date, taxing the beneficiaries of an act if done prior to, and leaving untaxed beneficiaries of a precisely similar act if done subsequent to that date." (*Binney* v. *Long,* 299 U.S. 280, 289 [57 S.Ct. 206, 81 L.Ed. 239].)

*Binney* v. *Long* has since been limited to the particular situation with which it was concerned and held not to apply to a statute in which the date upon which taxability is made to depend is not arbitrarily selected but is designed to effectuate a legitimate legislative purpose. (*Whitney* v. *State Tax Comm.,* 309 U.S. 530, 541 [60 S.Ct. 635, 84 L.Ed. 909].) In the Whitney case the court held constitutional a New York statute similar to that in the present case in which the taxation of transfers of property subject to a power of appointment was shifted from the exercise of the power to the gift thereof, and in which an unintended tax immunity was averted by the provision that powers created before the effective date of the change but exercised thereafter would be taxed under the statute in effect at the time of their creation. In 1930 the New York Legislature shifted the tax on transfers of property subject to a power of appointment from the exercise by the donee to the creation by the donor. Powers created before 1930 but exercised after that date were immune from taxation, since they were created at the time the tax was imposed upon their exercise and they were exercised at the time the tax was imposed on their creation. By amendment to the inheritance tax act in 1932, New York specifically provided that as to such powers the method of taxation prevailing before 1930 should govern, just as the California Legislature has done in the 1935 and 1941 amendments of section 2 (6). The court upheld the statute against the contention that it was invalid under the doctrine of *Binney* v. *Long, supra,* in that it discriminated between donees whose powers were created before 1930 and who were taxed on the exercise thereof, and those whose powers were created after 1930 and were exempt from taxation on their exercise. The Binney case was distinguished on the ground that the date upon which taxation depended was arbitrarily selected whereas in the Whitney case it was the date upon which the change in method of taxation became

effective, and the classification of powers into those created before 1930 and those created thereafter was reasonably related to the legislative purpose of preventing an unintended tax immunity. It was this statute that, as applied to resident donees of powers created by nonresident donors, was upheld by the United States Supreme Court in *Graves* v. *Schmidlapp*, 315 U.S. 657 [62 S.Ct. 870, 86 L.Ed. 1097, 141 A.L.R. 948].

The Whitney case cannot be distinguished on the ground that the power there considered was created by a resident donor. There, as in the present case, the statute unequivocally imposed the tax on the exercise of the power by the resident donee whether the donor was a resident of the state or not. The statute was upheld on the ground that it was merely a continuation of the method of taxation in force at the time of their creation for powers created before 1930 but exercised thereafter. Such a tax may be properly imposed even though the donor of the power was a nonresident and the transfer would not have been taxable had the power been created after 1930. (*Graves* v. *Schmidlap, supra,* 315 U.S. 657.) Since the residence of the donor does not control the imposition of a tax upon the transfer by the donee, it cannot be material to a claim that equal protection of the laws has been denied.

This appeal is therefore governed by *Whitney* v. *State Tax Commission* and not by *Binney* v. *Long*. Before June 25, 1935, the exercise of the power of appointment was made the taxable event; after that date, the tax is imposed upon the creation of the power. In cases such as the present, however, where the donor died before the effective date of the change and the donee exercised the power after that date, neither tax would apply and the same unintended tax immunity would be created as in the New York statute before its amendment. The California Legislature took the same course as the New York Legislature and provided that as to such powers the tax would be imposed under the statute previously in effect. (Section 2 (6) of the 1921 act, as amended in 1929.) In this manner, the Legislature created the same two classes of resident donees as those approved in the Whitney case. Given the legislative purpose to be achieved by the classification, the equal protection clause only requires that the classification be reasonably related to the achievement of that purpose and that all persons within each class be treated alike. (*Estate of Elston,* 32 Cal.App.2d 652, 658-659 [90 P.2d 608].)

Respondent's petition for a rehearing was denied October 2, 1950.