120 Cal.App.2d 219 (1953)
Estate of WILLIAM M. BAIRD, Deceased. LYDIA HENIGBAUM et al., Appellants,
v.
SECURITY FIRST NATIONAL BANK (a National Banking Association), as Trustee, etc., Respondent.
Civ. No. 19479. 
California Court of Appeals. Second Dist., Div. Three. 
Sept. 14, 1953.
 John E. Clay and Helen P. Clay for Appellants.
 Rodney F. Williams for Respondent.
 Guy Richards Crump, as Amicus Curiae.
 WOOD (Parker), J.
 The will of William M. Baird, admitted to probate November 12, 1924, provided, in part, as follows:
 "Eighthly: All the rest, residue and remainder of my estate I give, devise and bequeath as follows:"
 "I."
 "One-fourth thereof to said Pacific-Southwest Trust & Savings Bank and Margaret L. Baird, in trust, however, upon the following terms and conditions:"
 "1. ..."
 "2. Said Trustees shall possess, manage ... invest and reinvest the said trust property ... and shall collect and receive all of the rents ... and after the payment of the charges and expenses of the administration of this trust ... *221 shall make payment of the income then remaining ... in as nearly equal monthly installments as possible to my said wife Margaret L. Baird, such payments to be made to her for and during the term of her natural life ..."
 "3. Upon the death of my said wife this trust shall finally cease and terminate and payment and distribution of the principal of such trust, together with any undisbursed net income in the hands of the Trustee shall be made as follows, to-wit:"
 "(a) In accordance with the terms of any last will and testament of hers duly probated."
 "(b) If she shall die intestate then to her heirs at law per the then existing statute of succession of the State of California."
 The will also provided that said Margaret L. Baird should not have power or authority to transfer or encumber the trust property during the term of the trust.
 Under the decree of final distribution, which was made on August 7, 1929, certain property was distributed to said trustees in trust as provided in the will. Said decree provided, in part, as follows:
 "Fourth: That the balance of said estate, to wit, the sum of $492.78 and all other property belonging to said estate, whether described herein or not, be and it is hereby distributed as follows:"
 "Item 1. One-fourth thereof to Security-First National Bank of Los Angeles [successor to Pacific-Southwest Trust & Savings Bank, one of the trustees named in will] and Margaret L. Baird, but in trust and as trustees nevertheless, with the powers and duties ... provided by said testator in ... section Eighthly of said will ... to execute the trust ... and upon the termination of said trust ... to pay and distribute the principal of said trust together with any undisbursed net income in the hands of the surviving trustee as follows, to wit:"
 "(a) In accordance with the terms of any last will and testament of said Margaret L. Baird duly probated, or (b) if she shall die intestate then to her heirs at law per the then existing statute of succession of the state of California."
 Margaret L. Baird died on March 6, 1951. Her will was admitted to probate, and the Security-First National Bank of Los Angeles was appointed executor. Her will provided, in part, as follows:
 "I, Margaret L. Baird, do make this as and for my last will and testament, as follows: *222 "
 "After the payment therefrom of the expenses of my last illness and of my funeral and burial, and all of my just debts, I give, bequeath and devise all of the principal of that certain trust described and created by William M. Baird, my deceased husband, in and by subdivision 'I' of item 'eighthly' of his last will, dated September 4, 1923, and which was admitted to probate as his last will and testament in and by the Superior Court of the County of Los Angeles, State of California, November 12, 1924, in a proceeding, No. 70841, entitled 'In the Matter of the Estate of William M. Baird, Deceased,' then pending in said Court for the probate of said will and the administration of his said estate, to the following named legatees who shall survive me, as follows: [Here 26 money bequests were set forth--3 for $10,000 each, 1 for $5,000, 19 for $2,000 each, and 3 for $500 each.]"
 "If said principal of said trust shall be insufficient to pay all of said expenses, debts and legacies in full, each of said legacies shall be decreased in that proportion that the amount thereof, as above set forth, bears to the total amount of all said legacies, as above set forth."
 "I hereby appoint Security-First National Bank of Los Angeles, a national banking association, and H. L. Carnahan as executors of this will."
 "In Witness Whereof, I have hereunto subscribed my name this 9th day of November, 1934."
 There was no residuary clause in her will. Her individually owned property was of the value of approximately $48,000.
 On August 3, 1951, the Security-First National Bank of Los Angeles, as trustee of said trust, filed (in the matter of the estate of William M. Baird) its 25th and final account and its petition for order decreeing termination of said trust and for final distribution thereof. In said petition the trustee asked for distribution of all the assets of said trust to itself as executor of the will of Margaret L. Baird. The said petition stated, in part, that the amount of the specific bequests in Margaret's will is "less than the amount of assets" in the trust, and that her will "does not purport to distribute the residue of the assets of said trust over and above the amount of said specific bequests." The trustee asked therein that it be allowed $343.47 as ordinary compensation and $888.45 as a distribution fee; and that its attorney be allowed $150 for ordinary services.
 On August 28, 1951, the appellants herein, as heirs at law of Margaret L. Baird, filed objections to said petition for *223 distribution, wherein they objected to the distribution of the trust property, by the bank as trustee to itself as executor of Margaret's will, particularly the portion thereof which was not disposed of by Margaret's will. The objectors stated that they did not object to the trust property being listed in Margaret's estate for the purpose of assessing and collecting taxes due thereon; nor did they object to distributing to her estate such portion of the trust property as was appointed by Margaret to pay the expenses of her last illness, her funeral expenses, and her debts. They asked that the court order as follows: (1) distribution to the executor of the will of Margaret L. Baird, as trustee for her appointed creditors, of a sum of money commensurate with the allowable claims for the expenses of her last illness, her funeral expenses, and her just debts, as appointed by her in her will; (2) distribution of the amounts designated in her will to the legatees therein named who survived her, subject to the determination and collection of taxes through her estate if required by law; (3) distribution of the remainder of the trust property to her heirs in accordance with the law of succession.
 On March 31, 1952, the bank filed its supplement to said account and petition, and asked for extraordinary compensation of $250 for the bank as trustee and $1,000 for its attorney by reason of additional services required in connection with the objections.
 On April 30, 1952, appellants filed objections to said supplemental petition, wherein they objected to the allowance of extraordinary fees.
 The court found that Margaret, by her said will, intended to and did exercise the power of appointment set forth in William's will and in the decree of distribution in his estate; that she intended to and did appoint all the distributable assets of the trust to the executor of her will to blend and merge the same with her own individually owned assets for the purposes of administration and distribution in her estate.
 The court ordered that the distributable assets of said trust estate be delivered by the trustee (bank) to the executor of Margaret's will (bank) to be blended and merged with the assets individually owned by Margaret for the purposes of administration and distribution in her estate; that the trustee be allowed $343.47 as ordinary compensation, $888.45 as a distribution fee, and $700 for further ordinary and for extraordinary fees; that the trustee's attorney be allowed $150 as *224 ordinary compensation in the 25th account, and $950 as ordinary and extraordinary compensation in the supplement to that account.
 This appeal, by certain heirs at law of Margaret, is from said order.
 Appellants assert that there is a remainder or portion of the trust property which was not effectively appointed by Margaret in her will; and that such remainder consists of the portion of the trust property which remains after deducting (1) the total amount of the money bequests appointed by Margaret's will to legatees who survived her, and (2) the total amount of Margaret's expenses and debts designated by her will to be paid from the trust property. Appellants contend that the court erred in not ordering that such remainder be distributed under the alternative or subdivision "(b)" provision of William's will and the decree of distribution in his estate. They argue that under said "(b)" provision the said remainder (not disposed of by her will) should be distributed, under the trust decree in William's estate, to her heirs at law. As above shown, the decree of distribution in William's estate establishing the trust (and also his will) provided that the trust should terminate upon the death of Margaret. Under said decree in his estate (and under his will) the trust property, upon termination of the trust, was to be distributed (a) in accordance with any will of Margaret duly probated, or (b) if she shall die intestate then to her heirs at law. It therefore appears that Margaret was given the power of appointing, by her will, a person or persons to take the trust property. It also appears that in the event she should "die intestate" the trust property should be distributed to her heirs at law. She left a will, but the total amount of the money bequests therein to legatees who survived her (approximately $60,000, according to statement of appellants' counsel) plus the amount of her expenses and debts ($1,801, according to the claims filed within the time allowed for filing creditors' claims) plus the estimated tax ($1,450) was several thousand dollars less than the appraised value of the trust property (appraised value being $81,796.27 or $88,845). (The trustee said that it evaluated the trust property at $81,796.27 for inheritance tax purposes, and evaluated it at $88,845 for the purpose of fixing trustee's fees.) It therefore appears that Margaret failed to appoint or dispose of trust property of the value of several thousand dollars. Respondent (trustee) argues, however, that Margaret intended to exercise her power *225 of appointment fully and to dispose of all the trust property by her will; that even if she did not dispose of all the property expressly, she intended that the residue should be transferred to her executor to be disposed of as a part of her estate. As evidence of such intention, the respondent refers to provisions in her will as follows: that "I give, bequeath and devise all of the principal" of the William M. Baird trust; and that "if said principal of said trust shall be insufficient to pay all of said expenses, debts and legacies in full" each of the legacies shall be decreased proportionately. Respondent argues further that the use of the word "give" in her will instead of such words as "appoint" or "convey" indicates her intention to take the trust property out of the trust and make the property her own. Irrespective of her intention, the result is that she did not appoint or dispose of or give all the trust property, and she did not make provision in her will for the disposition of the residue thereof. It is to be noted also that she did not make a provision in her will for disposition of any of her individually owned property. [1] In Estate of Beldon, 11 Cal.2d 108, it was said at page 112 [77 P.2d 1052]: "A testator has the right to make a will which does not dispose of all of his property but leaves a residue to pass to his heirs under the law of succession. Such a will is not the usual one but when the language which leads to that result is clear the will must be given effect accordingly. ... Possibly ... Beldon intended to leave his property as it was distributed by the decree of the probate court. But he did not express this intention in his will. ... To say that because a will does not dispose of all of the testator's property it is ambiguous and must be construed so as to prevent intestacy, either total or partial, is to use a rule of construction as the reason for construction. [2] But a will is never open to construction merely because it does not dispose of all of the testator's property." [3a] The remainder or portion of the trust property as to which Margaret did not exercise her power of appointment should be distributed under the said subdivision "(b)" provision of the decree of distribution in the estate of William M. Baird, that is, it should be distributed by the trustee, under the provisions of the testamentary trust of William, to the heirs of Margaret according to the law of succession, as bequests or gifts direct from William to the heirs of Margaret. The words "die intestate," as used in the provision of the trust decree that if Margaret should *226 "die intestate," should be interpreted to mean that if Margaret should die without leaving a will wherein she appointed or designated persons who should receive the trust property. It cannot be said that she "died testate" within the meaning of the trust decree merely because she left a will. The said "(a)" provision of the trust decree was to the effect that the trust property should be distributed in accordance with the terms of any will of Margaret. The said "(b)" provision of that decree follows the "(a)" provision immediately, and the words "die intestate" were used therein in the sense that if Margaret died without leaving a will stating the terms for distribution of the trust property. The power of appointment, granted to her under the trust decree, was a valuable right which she could exercise by appropriate provisions in her will. If she left a will which did not fully exercise the right and thereby she failed to dispose of all the trust property, then it would appear that she died intestate, within the meaning of the trust decree, with reference to the matter of exercising a part of her power of appointment. In the case of In re Terwilligar's Will, 135 Misc. 170, 187 [237 N.Y.S. 390], where there was a partial exercise of a power of appointment, the court upheld the exercise of a power to the extent that it was a valid appointment, and said, at page 408 [237 N.Y.S.]: "The method of disposition of these remainders which were not validly appointed will be determined by the alternative gift of Mr. Terwilligar [the donor of the power]: 'In case she [wife, donee of the power] shall die intestate, then I give, devise and bequeath my said residuary estate to my wife's next of kin and to my sister.' ..." The alternative provision in the trust decree herein is similar to the alternative provision in said Terwilligar matter. In 72 Corpus Juris Secundum, page 465, section 55, it is said: "[W]hen a power terminates without having been executed, the subject matter passes to those to whom it may have been limited in default of execution ... and, similarly, where a power is partially unexecuted at its termination, the portion of the subject matter or the interest therein as to which it has not been exercised usually remains in the donor or passes as in default of execution." [4] In 41 American Jurisprudence, it is said at page 866: "Where an appointment is good in part and bad in part, that which is good may stand and the balance distributed as though that part had not been appointed, and the persons who have received a part under a valid part of *227 the appointment are not thereby barred from sharing in the balance, which passes as in default of appointment."
 [3b] Appellants assert further that the unappointed or undisposed of part of the trust property should not become a part of Margaret's estate, because the trust property was the separate property of William and since Margaret was not survived by a husband or issue, the property, if it should become a part of her estate, would go, under section 229 of the Probate Code, [fn. 1] to the children of William. The will of William and the trust decree indicate that it was the intention of William that the trust property (here involved) should go to the heirs of Margaret if she did not appoint the property in her will.
 The court erred in ordering that the unappointed part of the trust property be delivered to the executor of Margaret's will to be blended and merged with her individual assets for the purpose of administration in her estate.
 Under the circumstances here, the appointed portion of the trust property (the portion disposed of by Margaret in her will) also was not distributable as a part of Margaret's estate. In the case of United States v. Field, 255 U.S. 257 [41 S.Ct. 256, 65 L.Ed. 617], it was said at page 264: "[W]hether the power be or be not exercised, the property that was subject to appointment is not subject to distribution as part of the estate of the donee. If there be no appointment, it goes according to the disposition of the donor. If there be an appointment ... then ... it goes not to the next of kin or the legatees of the donee, but to his appointees under the power." In the case of In re Taylor's Will, 116 N.Y.S.2d 314, it was said at page 317: "There being no provision in the will, express or implied, that the appointive property ... be brought into the donee's estate and blended with her individual property ... such property passes directly, under the instruments granting the powers, to the appointees." In Hooker v. Drayton, 69 R.I. 290 [33 A.2d 206, 150 A.L.R. 723], it was said at page 296: "[T]he appointee of the appointed property benefits not out of the estate of the donee of the power, but out of the estate of the donor. 'It is a recognized rule of the common law that a bequest which comes to a beneficiary *228 through the exercise of a power of appointment or by reason of a failure of its exercise is a gift to the beneficiary from the creator and not from the donee of the power.' " In Estate of Elston, 32 Cal.App.2d 652, it was said at page 659 [90 P.2d 608]: "A power of appointment is a delegation by the donor, in the disposition of his property, to the donee who does not become the owner and holds only as trustee." The appointed portion of the trust property would be the portion required to pay (1) the money legacies to the persons who survived her; and (2) the money necessary to pay the expenses of her last illness, her funeral expenses and debts. In addition to the amounts to be deducted from the trust property to pay said legacies, expenses and debts, it would also be necessary to deduct therefrom amounts to pay taxes and charges in connection with the trust administration. The amounts necessary to pay said legacies can be ascertained only after it has been determined which legatees survived her--which determination could be made in the administration of her estate. The amounts necessary to pay the expenses of her illness and funeral, and her debts, and the taxes, can also be determined in the course of administration of her estate. When the names of the beneficiaries (including her heirs at law) and the said amounts have been so determined, the trustee will be in a position, by referring to the proceedings in Margaret's estate, to designate the persons to whom distribution should be made under the trust decree and the amount to be distributed to each person thereunder. Especially, it is to be noted that such information as to the proceedings in her estate would be readily accessible to the trustee since the trustee is also the executor of her will. Since there was no residuary clause in Margaret's will and since there was an unappointed portion of the trust property which should be distributed directly by the trustee, it appears that it would not be convenient or advantageous to distribute the appointed portion of the property to the executor of Margaret's will to become a part of her estate. However, for the purposes of assessing and collecting taxes in connection with the trust property the property may be considered a part of Margaret's estate. [5] The exercise of the power of appointment by Margaret, or the transfer of trust property by her, was taxable in her estate. In Estate of Newton, 35 Cal.2d 830, it was said at page 836 [221 P.2d 952, 19 A.L.R.2d 1399]: "[T]he exercise of the power of appointment is deemed "a transfer taxable under the provisions of this act, in the same manner *229 as though the property to which such appointment relates belonged absolutely to the donee of such power. ...' " In the concurring opinion of Justice Traynor in the Newton case, it was said at page 838: "The imposition of an inheritance or estate tax does not depend on the decedent's ownership of the property under common law principles. The tax is not imposed on the property, but on the decedent's transfer of that property. When, as in the present case, the statute expressly makes the transfer of property taxable 'in the same manner as though the property ... belonged absolutely' to the decedent, it is irrelevant that under common law concepts of property ownership the property did not belong absolutely to the decedent." It was also said in the concurring opinion, at page 840: "There has been no change in the concept of property ownership enunciated by the Field case [referred to herein, supra]; that decision is still applicable to powers of appointment exercised before the enactment of section 811(f) [of Internal Revenue Code]." (In the present case, as in the Estate of Newton, supra, the donor of the power died prior to June 25, 1935 [date of amendment of Inheritance Tax Act, 2, subd. (6)], and the power was exercised after that date.) If the property were distributed to the executor and distributed as a part of Margaret's estate, there would be additional executor's fees, attorney's fees and appraiser's fees to be paid by reason of the increased amount of her estate. [3c] Under the circumstances here, especially since Margaret did not appoint all the trust property and there was no residuary clause in her will with respect to the trust property or at all, the appropriate procedure would be for the trustee to distribute the trust property under and according to the provisions of the trust decree, after having ascertained the names of the beneficiaries and the other necessary information from the proceedings in Margaret's estate; and the trust property should not be delivered by the trustee to itself as executor to become a part of the estate, except as is necessary to pay the amounts appointed by her for expenses and debts."
 Appellants contend further that the trustee should not have been allowed a distribution fee; and that the attorney for the trustee should not have been allowed a fee for extraordinary services in connection with the distribution of the trust property. [6] In view of the above conclusion to the effect that the trust property should not be distributed in accordance with the petition of the trustee, a distribution fee to the *230 trustee and extraordinary fees to the attorney in connection with the distribution should not be allowed. The amount allowed as extraordinary fees for the attorney was included in the sum of $950 which was allowed for ordinary and extraordinary services of the attorney in connection with the supplemental account. It cannot be determined from the order how much of the $950 was allowed for such extraordinary fees. Since $150 was asked by the attorney as ordinary fees in the 25th account, it is to be assumed that the ordinary fees allowed for his services in the supplemental account would be a similar amount and therefore the major part of the $950 was allowed for extraordinary fees.
 The order directing distribution of the trust property, and the order allowing the trustee $888.45 as a distribution fee, are reversed. The order allowing $950 to the attorney for ordinary and extraordinary fees is reversed insofar as it includes an allowance for extraordinary fees.
 Shinn, P. J., and Vallee, J., concurred.
NOTES
[fn. 1] 1. Section 229 of the Probate Code provides: "If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift ... such property goes in equal shares to the children of the deceased spouse. ..."