[Civ. No. 20940. Second Dist., Div. Three. Sept. 8, 1955.]

Estate of WILLIAM M. BAIRD, Deceased. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES et al., Respondents, v. LYDIA HENIGBAUM et al., Appellants.

John E. Clay and Helen P. Clay for Appellants.

Rodney F. Williams for Respondents.

VALLÉE, J.—This is a companion case to *Estate of Baird,* *ante,* p. 333 [287 P.2d 365]. William M. Baird died testate. The decree of distribution in his estate distributed one-fourth of the residue to his widow Margaret and Pacific-Southwest Trust and Savings Bank, now Security-First National Bank of Los Angeles, referred to as the bank, in trust for the life of Margaret, with a power of appointment of the remainder in Margaret and in the event of its nonexercise, to her heirs at law. Margaret died on March 6, 1951. The trust terminated on her death. She exercised the power of appointment as to only a part of the property. Shortly after Margaret's death the bank erroneously transferred all of the trust property to itself as executor of Margaret's will, inventoried it as a part of Margaret's estate, filed tax returns, and paid taxes on that basis. A controversy arose as to the propriety of the bank's having transferred the trust property to itself as executor of Margaret's will and as to in whom the unappointed trust property was vested. The bank, as the remaining trustee, filed its final account and petition for distribution and for fees to itself and its attorney. It also filed a petition for instructions as to the administration of the trust. The blood relatives of Margaret filed objections to the bank's petitions. After a hearing, an order was made determining the issues made by the petitions and the objections thereto. The blood relatives of Margaret appeal from various parts of that order.

The controversy as to the propriety of the bank's having transferred the trust property to itself as executor of the will of Margaret was litigated. In *Estate of Baird,* 120 Cal. App.2d 219 [260 P.2d 1052], it was held that the bank, as remaining trustee, had no legal right to transfer the trust property to itself as executor of Margaret's will, that under the power of appointment given to Margaret the trust property as to which the power had been exercised was vested in and should have been transferred directly to the appointees, and that the property as to which the power had not been exercised was vested in and should have been transferred to Margaret's heirs at law. The controversy as to who were Margaret's heirs at law was also litigated. In *Estate of*

*Baird, ante,* p. 333 [287 P.2d 365], it was held that Margaret's heirs at law were her blood relatives.

A part of the order appealed from ordered that specified amounts appointed by Margaret to named appointees be paid, subject to the right of the bank to withhold 15 per cent of such appointed amounts pending the determination and assessment of estate and inheritance taxes thereon. William's will contained this provision, which was carried into the decree of distribution in his estate:*

"I specifically direct that all taxes, including inheritance taxes and federal estate taxes, which may be chargeable against my estate or against the gifts, devises, bequests and interests under this will, shall be paid out of the general assets of my estate and that each gift and interest under this will shall be delivered in full and without deduction on account of any such taxes."

Appellants contend that under this provision of William's will it is incumbent on the bank to pay the appointed amounts in full and to deduct the taxes, if any, from the unappointed part of the trust property. William's estate was distributed in 1929. All taxes on his estate were paid in full before distribution. The taxes involved here are taxes on the exercise of the power of appointment. ■ The exercise of the power is a transfer which may be subject to tax. It appears there are no funds with which to pay the taxes, if any, other than the trust property, part of which is appointed and part of which is unappointed. ■ The fact that there may be a tax on the appointed amounts and there may not be a tax on the unappointed amounts is no reason for passing the burden of a tax on the appointed amounts to the beneficiaries of the unappointed amounts. ■ Nor is the fact that the bank without legal justification transferred the property to itself as executor of Margaret's will, or that it had been derelict in the handling of taxes, as asserted by appellants, warrant for penalizing the beneficiaries of the unappointed property. There was evidence from which the court could conclude that 15 per cent is a reasonable amount to withhold. We find no abuse of discretion.

The court awarded the bank its costs on appeal in *Estate of Baird, supra,* 120 Cal.App.2d 219, out of the trust property. That was an appeal by Margaret's blood relatives from an order adjudging that the trust property be delivered by

---

*William's will was carried verbatim into the decree of distribution.

the bank as trustee to itself as executor of Margaret's will, to be blended and merged with the assets individually owned by Margaret for the purpose of administration and distribution in her estate. The bank had in fact transferred the property to itself as executor prior to the order. The blood relatives were successful and the order was reversed. The remittitur read: "Appellants to recover costs on appeal." Appellants contend the court erred in ordering that the bank's costs on that appeal be paid out of the trust property. We agree. ▇ "The underlying principle which guides the court in allowing costs and attorneys' fees incidental to litigation out of a trust estate is that such litigation is a benefit and a service to the trust." (*Dingwell* v. *Seymour*, 91 Cal. App. 483, 513 [267 P. 327].) ▇ "Where a trustee by reason of his own greed or indifference has breached his duty to the trust and has thereby brought on litigation against it his expense must be borne out of his own property." (*Estate of Vokal*, 121 Cal.App.2d 252, 259 [263 P.2d 64].) ▇ "The trustee or other fiduciary owes undivided duty to his beneficiary and cannot place himself in any position which would expose him to the temptation of acting contrary to the best interests of his beneficiaries." (*Id.*, p. 257.) In *Estate of McLellan*, 35 Cal.App.2d 18 [94 P.2d 408], there had been a prior appeal in which the trustees had been unsuccessful and the costs on appeal had been assessed against them. Thereafter the probate court refused to award them such costs out of the trust property. The trustees appealed. The court held (p. 21):

"By the express terms of the judgment rendered on the previous appeal reversing the decree settling the first account it was directed that respondent should recover her costs on such appeal. Therefore the refusal of the superior court at the time of the hearing of the second account to reimburse the trustees for the costs of said appeal out of the trust estate of which respondent was beneficiary, was in conformity with the directions given in said judgment of reversal."

So here, the only order that the court could properly have made was one in conformity with the judgment of reversal in *Estate of Baird*, 120 Cal.App.2d 219 [260 P.2d 1052]. In no proper sense can the action of the bank in resisting the appeal of Margaret's blood relatives in that proceeding be said to have been for the benefit of the trust. It was exactly the opposite. It was for the benefit of Margaret's estate and the bank as executor of her will. To pay the bank for

its costs on that appeal would be paying it for a service against the trust. Such costs must be borne by the bank itself.

In its final account filed August 3, 1951, the bank valued the trust property at $81,796.27 for inheritance tax purposes and at $88,845 for the purpose of fixing its fees as trustee. In a supplement to the first account it stated it had revalued the property on February 16, 1953, at $89,236.54 and had revalued it on March 16, 1954, at $94,720. In a summary to this supplemental account it valued it on March 19, 1954 at $92,816.02. The court approved the account. Appellants assert the court erred. They say the court approved inconsistent and irreconcilable valuations. We think not. It appears that the value of $81,796.27 was fixed by an inheritance tax appraiser. The valuations made by the bank were shown to be justified. Among the assets of the trust were bonds, preferred and common stocks, and building and loan certificates. The value of stocks and bonds may fluctuate from day to day. Between the respective valuation dates some of the stocks were sold and a profit realized, and some of the building and loan certificates were cashed. Dividends and interest were received from time to time. There was no evidence that the valuations were not reasonable. The court did not err in approving the account in this respect.

The bank in a second supplement to its final account prayed for an allowance of fees to itself and its attorney for ordinary and extraordinary services for the period from March 6, 1952 to March 19, 1954. During that period the appeal in *Estate of Baird, supra,* 120 Cal.App.2d 219, was pending. The court allowed the bank $1,380 as trustee fees for ordinary services for that period and allowed its attorney $150 for preparing the first supplement to its final account and $300 for his ordinary services from March 6, 1952, to March 19, 1954, the period covered by the second supplement to the final account. It reserved decision as to what, if any, compensation should be allowed the bank and its attorney for extraordinary services performed since the decision in *Estate of Baird, supra.* As we have mentioned, Margaret died on March 6, 1951.

Appellants' contention is that the question of fees is res judicata because it was said in *Estate of Baird, supra,* (p. 229):

"Appellants contend further than the trustee should not have been allowed a distribution fee; and that the attorney for the trustee should not have been allowed a fee for ex-

traordinary services in connection with the distribution of the trust property. In view of the above conclusion to the effect that the trust property should not be distributed in accordance with the petition of the trustee, a distribution fee to the trustee and extraordinary fees to the attorney in connection with the distribution should not be allowed. The amount allowed as extraordinary fees for the attorney was included in the sum of $950 which was allowed for ordinary and extraordinary services of the attorney in connection with the supplemental account. It cannot be determined from the order how much of the $950 was allowed for such extraordinary fees. Since $150 was asked by the attorney as ordinary fees in the 25th account, it is to be assumed that the ordinary fees allowed for his services in the supplemental account would be a similar amount and therefore the major part of the $950 was allowed for extraordinary fees.

"The order directing distribution of the trust property, and the order allowing the trustee $888.45 as a distribution fee, are reversed. The order allowing $950 to the attorney for ordinary and extraordinary fees is reversed insofar as it includes an allowance for extraordinary fees."

They do not question the allowance of $150 to the bank's attorney. The services, referred to in *Estate of Baird, supra,* were those rendered in connection with the unlawful distribution of the trust property by the bank to itself as executor of Margaret's will, and the fees referred to were for services rendered prior to March 6, 1952. It did not refer to the services for which the court in the present proceeding allowed the bank and its attorney compensation. The question of fees for the services here involved is not res judicata. The bank has been required to perform ordinary services as trustee longer than normally would have been the case. ■ It and its attorney are entitled to compensation for proper ordinary services performed since termination of the trust. (*Estate of Scrimger,* 188 Cal. 158, 167 [206 P. 65].) ■ The fact that the bank unlawfully distributed the trust property to itself as executor does not preclude it as a matter of law from receiving compensation for ordinary services properly rendered the trust estate and the beneficiaries. There is no claim that the amounts allowed are unreasonable.

It is next claimed that the probate court "erred in ordering that it had jurisdiction over issues already adjudicated." If we understand this contention, it is predicated on the theory that *Estate of Baird, supra,* 120 Cal.App.2d 219, ad-

judicated all the issues now presented. That decision adjudicated that the bank had illegally transferred the trust property to itself as executor of Margaret's will, that ·the trust property was vested in Margaret's appointees and her heirs, and the question of fees with respect to the bank's illegal transfer—nothing more. The point has no merit.

Finally it is contended that the court erred in not removing the bank as trustee. Appellants petitioned for its removal. The court denied the petition in the order appealed from. Appellants say the court abused its discretion in not removing the bank as trustee because it breached its trust in several serious respects. These, they say, are: it transferred the trust property to itself as executor of Margaret's will and inventoried it as "Decedent's interest under William L. Baird, Testamentary Trust #SS-5675, Security First National Bank, Trustee, $78,275.05" in violation of the express demand of the remaindermen and without authorization of court; it permitted the inventory to remain on file without change from shortly after Margaret's death on March 6, 1951, to and including May 20, 1954, the date of the hearing preceding the order appealed from and six months after the decision in *Estate of Baird*, 120 Cal.App.2d 219 [260 P.2d 1052], became final; as executor of Margaret's will it filed an estate tax preliminary notice in which it stated that the trust properties were personal assets of Margaret; it filed tax returns listing the trust property as an asset of Margaret's estate, paid taxes on that basis, and charged the trust therefor; it attempted to sell trust real property as a part of Margaret's estate; through its counsel, it took the position at a previous hearing that Margaret's heirs were William's blood relatives and not Margaret's, and this at a time when no claim or appearance had been made by William's blood relatives seeking to defeat the claim of Margaret's blood relatives; it failed to deliver to the appointed beneficiaries their shares of the trust property after the decision in *Estate of Baird, supra,* became final; it informed the internal revenue department three months after that decision had become final that "no progress has been made and the litigation would likely go to the Supreme Court for final determination."

The question whether the trustee should be removed was primarily one for the trial court; and although there are circumstances which tend to cast doubt on the bank's complete *bona fides,* the decision of that court has support in the evidence and cannot be disturbed by this court. (*Tevis* v.

*Butler,* 103 Cal. 249, 250 [37 P. 223].) If the probate court had made findings removing the bank as trustee, perhaps they could have been sustained. ■ The court may have concluded that the conduct of the bank was the result of bad judgment, which is not the equivalent of bad faith. It appears that after the bank had transferred the trust property to itself as executor of Margaret's will it secured an order approving its action. That is the order which was reversed in *Estate of Baird, supra,* 120 Cal.App.2d 219. While the bank through its counsel at a prior hearing supported the claims of William's blood relatives, it remained neutral at the present hearing at which the question was in issue. ■ It is obvious the bank cannot deliver the unappointed trust property until the persons entitled to it have been finally determined. (See *Estate of Baird, ante,* p. 333 [287 P.2d 365].) There was evidence that: after the decision in *Estate of Baird, supra,* 120 Cal.App.2d 219, the bank proceeded to convert stocks and bonds into cash; it encountered difficulty in ascertaining the places of residence of some of the appointees and whether they were still living; it had been impossible up to the time of the hearing to obtain a final determination of the amount of taxes to be paid; the attempt to sell the real property was on the assumption it was part of Margaret's estate. While the conduct of the bank as trustee may be subject to criticism, we cannot say—particularly in view of the fact that the trust property will be distributed shortly—that the court abused its discretion in not removing it.

The part of the order allowing the trustee its costs on appeal in *Estate of Baird,* 120 Cal.App.2d 219 [260 P.2d 1052], is reversed; all other parts of the order appealed from are affirmed. The parties shall bear their own costs on appeal.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for rehearing was denied September 30, 1955.